The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Jerry MONTOYA, Defendant–Appellant.

No. 86CA0180.

Colorado Court of Appeals, Div. V.

March 16, 1989.

Rehearing Denied April 13, 1989.

Certiorari Denied May 1, 1989.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Janet Fullmer Youtz, Deputy State Public Defender, Denver, for defendant-appellant.

CRISWELL, Judge.

The defendant, Jerry Montoya, appeals the judgment of conviction of aggravated robbery and of being an habitual criminal. We reverse and remand for a new trial.

In February 1985, a tavern was robbed by an armed masked robber. Because of the mask, the bartender was unable to identify the perpetrator, although she testified that, like defendant, he was short, dark-complexioned, and of Hispanic ancestry.

A relative by marriage of defendant's, who was a customer of the bar just before and immediately after the robbery, and who had occasion to see the robber prior to his entry into the bar, later gave a detailed, videotaped statement to police in which he positively identified defendant as the robber. In this statement the customer said that he had known defendant for 20 years since defendant's marriage to one of the customer's cousins; that he saw defendant leaving the bar prior to the robbery; that he saw him again just prior to defendant's re-entry, when the mask had not yet been pulled down over his face; and that he saw

him leave the area in a golden-colored Chevrolet.

At the time of trial, however, this witness recanted his positive identification of defendant as the robber, as well as many of his detailed descriptions of the events he witnessed. While admitting that he had made the statements and others of similar import to other officers on other occasions, he testified that he was mistaken in his identification of defendant and that his mistake was induced, in part, by suggestive remarks made by several law enforcement investigators.

Relying upon § 16–10–201, C.R.S. (1986 Repl. Vol. 8A) and CRE 801(d)(1)(C), the trial court, after excising a portion which it considered prejudicial, admitted the videotape of the customer's prior statements into evidence as a marked exhibit and caused it to be shown to the jury. As such an exhibit, the videotape was allowed to be taken by the jurors into the jury room where they were provided with equipment that enabled them to replay all, or any portion, of it during their deliberations. In addition, the prosecutor in final argument encouraged the jurors to view the videotape as many times as they might desire.

I.

The defendant first asserts that the trial court erred in allowing the videotape to be admitted as an exhibit. While he concedes that it accurately records the witness' statements and demeanor, and although a substantial number of the videotaped statements were inconsistent with the witness' trial testimony, defendant argues that, since the witness admitted making those prior statements, they were inadmissible to impeach him. Further, he claims that, even if the statements were admissible, the videotaped form of the statements was so prejudicial that a written transcript should have been substituted in lieu thereof. We disagree.

So long as a prior statement relates to a matter involving the witness' own knowledge and he is given an opportunity to explain or deny the statement (or he

is still available to give further testimony), a witness' denial of a prior statement is not a prerequisite for its admission under § 16–10–201, C.R.S. (1986 Repl. Vol. 8A). *Montoya v. People,* 740 P.2d 992 (Colo. 1987). A statement admitted under this statute is admitted for the truth of its contents, not merely for impeachment purposes. *People v. Madril,* 746 P.2d 1329 (Colo.1987). Hence, the statements of the witness here were admissible as substantive evidence to identify defendant as the robber, even though the witness readily admitted making them but sought to explain his reasons therefor.

■ The law and policy governing the admissibility of photographs and motion pictures is applicable to the admissibility of videotapes. *People v. Avery,* 736 P.2d 1233 (Colo.App.1986). However, like any other evidence, a videotape may be refused admission if its prejudicial effect would outweigh its relevance. CRE 403.

■ Here, however, we perceive no "unfair prejudice" within the meaning of CRE 403. The exhibit portrays nothing that could reasonably be expected to arouse the emotions of a spectator. Of course, a visual and audio record of a witness' statement may more vividly demonstrate the presence or absence of coercion or suggestiveness by the interrogator than would a simple written record of the interrogation. Thus, a videotape may be of greater relevance upon such issues than a written transcript might be. Such greater relevance, however, while causing the videotape to have a greater impact than an exhibit in another form, does not result in the sort of "unfair prejudice" to which the policy of CRE 403 directs itself. *See United States v. Weisz,* 718 F.2d 413 (D.C.Cir.1983), *cert. denied,* 465 U.S. 1027, 104 S.Ct. 1285, 79 L.Ed.2d 688 (1984).

## II.

Defendant also contends that, even if the videotape was admissible as an exhibit, the trial court committed prejudicial error in allowing the jurors unrestricted, unsupervised access to it during their deliberations. We agree.

The Colorado Rules of Evidence lay down the criteria for the admissibility of evidence. Yet, neither those rules nor the Colorado Rules of Criminal Procedure address the question whether an exhibit, properly admitted as evidence, should be allowed to be reviewed privately by the jury during its deliberations.

However, Crim.P. 57(b) provides that, if a procedure is not specified in the Colorado Rules of Criminal Procedure, the court "shall look to the Rules of Civil Procedure" and proceed in "any lawful manner" not otherwise inconsistent with the governing rules. And, C.R.C.P. 47(m) provides, among other things, that the jurors generally "may take all papers, except ... depositions ... which have been received in the case" when they retire to deliberate.

While C.R.C.P. 47(m) is not strictly applicable in this case, nevertheless, its prohibition against the jurors taking a deposition with them (even though admitted as an exhibit) is reflective of the general concern that courts have expressed about allowing a jury to engage in the unsupervised review of materials of a testimonial character. For example, even if the prior testimony of a witness is to be reviewed by the jury in open court by its listening to a reading or a recording thereof, the court must exercise caution so as to assure that undue weight or emphasis is not placed upon that testimony, or upon some part thereof, to the prejudice of other testimony upon the same subject. *Settle v. People,* 180 Colo. 262, 504 P.2d 680 (1972). *See Franklin v. People,* 734 P.2d 133 (Colo. App.1986).

■ Likewise, because jurors may give undue weight to the testimony contained within a deposition which they take with them and may not accord adequate consideration to controverting testimony received from live witnesses, it is the universal rule that depositions may not be reviewed by a jury on an unsupervised basis. *See* C.R.C. P. 47(m); Annot., 57 A.L.R.2d 1011 (1958); 3 ABA, *Standards for Criminal Justice,* Standard 15–4.1 (1986).

Consistent with this concern, other jurisdictions have ruled that a videotaped deposition may not be privately reviewed by the jury. *United States v. Binder*, 769 F.2d 595 (9th Cir.1985); *Martin v. State*, 747 P.2d 316 (Okla.Cr.App.1987). And, one court has decreed that it is error to allow the jurors to view a videotape of a prior consistent statement during their deliberations. *Chambers v. State*, 726 P.2d 1269 (Wyo.1986).

Also consonant with this concern, in *People v. Avery, supra,* the case in which we initially authorized the receipt of videotapes as exhibits, we approvingly noted, in passing, that the trial court had not allowed the videotape of a physical test to be taken into the jury room because it was "testimonial in character."

A videotape of a witness' interrogation is not, of course, a "deposition," as such. Yet, when it is placed before a jury under § 16–10–201 for proof of the truth of the statements made by the witness, those statements in such form become so akin to previously recorded testimony, such as an out-of-court deposition, as to make their effect virtually indistinguishable from deposition testimony.

■ For these reasons, we conclude that a trial court may allow jurors to review a videotape of a witness' previous statements, which has been admitted for substantive purposes, only under circumstances that will assure that such statements are not given "undue weight or emphasis." *See Settle v. People, supra.*

The precise procedure to be followed to assure this result lies within the trial court's sound discretion. In some instances, for example, the court may conclude that the jurors should be allowed to view the videotape only to the extent, and in the manner, that they would be allowed to rehear previous testimony. In other cases, the adoption of some other procedure may be sufficient. In each case, however, it is the responsibility of the trial court to supervise the procedure adopted.

■ Here, the trial court failed to adopt any such controlled procedure to prevent undue weight being accorded the videotape to the prejudice of the sworn exculpatory testimony of the same witness given in open court. Rather, the use of the videotape was left entirely within the jury's own discretion with no direction from the court. This constituted a failure to exercise the responsibility that the nature of the exhibit demanded.

Moreover, we conclude that this error was prejudicial. The out-of-court statements of the witness constituted the primary, if not the sole, evidence of defendant's guilt. To allow the jurors to engage in the unsupervised, and perhaps repetitive, viewing of these statements was inherently prejudicial to defendant.

## III.

■ We have also considered, but reject, defendant's assertion that none of his prior convictions should have been considered in determining his status as an habitual criminal. Each prior conviction was based upon a plea of guilty entered by defendant. Upon reviewing the record of the providency hearing in each case, as well as the present trial court's findings of fact, which are supported by the evidence, we conclude that, in the case of each guilty plea, the advisement given by the court met the requisite constitutional and statutory standards and that each plea was voluntarily, intelligently, and knowingly entered.

The judgment is reversed and the cause is remanded for a new trial.

METZGER and HUME, JJ., concur.