The **PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Jim LESSLIE, Defendant–Appellant.**

**No. 94CA1947.**

Colorado Court of Appeals,
Div. IV.

June 13, 1996.

Rehearing Denied Aug. 15, 1996.

Certiorari Denied June 30, 1997.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Lynne M. Olivia, Special Assistant Attorney General, Denver, for Plaintiff–Appellee.

John Louis Mehlig, Montrose; Margaret L. Carey, Montrose,; Woodrow & Roushar, Victor T. Roushar, Montrose, for Defendant–Appellant.

Opinion by Judge DAVIDSON.

Defendant, Jim Lesslie, appeals from the judgment of conviction entered after a jury verdict finding him guilty of conspiracy to commit eavesdropping in violation of § 18–2–201, C.R.S. (1986 Repl.Vol. 8B). We affirm.

In August 1992, in an effort to intercept conversations related to narcotics transactions, defendant, the deputy sheriff of Hinsdale County, cooperated with others to place a listening device on the window sill of the men's restroom of a local bar and to monitor conversations from a nearby motel. While conversations were intercepted, no drug transactions were overheard.

The next day the bar owner found and removed the device, and displayed it in the bar. Sometime later, the bar owner reported the incident to the district attorney's office,

and an investigation resulted in the prosecution at issue here.

## I.

Defendant makes three interrelated contentions of error regarding whether communications in the bar restroom fit within the definition of conversations or discussions protected under the eavesdropping statute. First, defendant contends that the trial court erred in denying his motion to dismiss the charges because there was no legitimate expectation of privacy as to conversations in the bar restroom. Alternatively, defendant contends that, since the court declined to dismiss the case on this legal ground, it erred in both excluding his proffered jury instructions and expert testimony regarding reasonable expectations of privacy. We disagree with each contention.

Section 18–9–304(1)(a), C.R.S. (1986 Repl. Vol. 8A) provides that, in order to commit the crime of eavesdropping, a person, while not being visibly present, must overhear or attempt to overhear a conversation or discussion without the consent of at least one of the parties to the conversation or discussion. A "conversation" or "discussion" is synonymous with the term "oral communication," which is defined and limited in § 18–9–301(8), C.R.S. (1995 Cum.Supp.) as "any oral communication uttered by any person believing that such communication is not subject to interception, under circumstances justifying such belief." *People v. Hart,* 787 P.2d 186 (Colo. App.1989); *see People v. Blehm,* 44 Colo.App. 472, 623 P.2d 411 (1980); *see also* § 16–15–101(8), C.R.S. (1995 Cum.Supp.).

Whether the circumstances of a communication justify a belief that it is not subject to interception is analyzed in the same manner as the question whether an investigative activity amounts to a search: that is, whether there is a justifiable expectation of privacy at the time and place of the communication. *People v. Palmer,* 888 P.2d 348 (Colo.App.1994); Colo. Const. art. II, § 7; *see also Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Title III of the Omnibus Crime Control and Safe Streets Act of 1968,* 18 U.S.C. § 2510, et seq. (1988).

Both the statutory and constitutional test for a reasonable expectation of privacy, in turn, require a determination whether there is an actual expectation of privacy and whether such expectation of privacy is legitimate, that is, is it one that society is willing to recognize as reasonable.

The latter, objective determination is tested against the customs, values, and common understandings that confer a sense of privacy upon many of our basic activities. *People v. Oates,* 698 P.2d 811 (Colo.1985); *cf. O'Connor v. Ortega,* 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987) (reasonable expectation must be addressed on a case-by-case basis weighing the general practical societal expectations of privacy in the workplace against the practical realities of the particular workplace); *compare People v. Hillman,* 834 P.2d 1271 (Colo.1992) (no invasion of privacy in observation of that which is plainly visible to the public) *and United States v. Rose,* 669 F.2d 23 (1st Cir.1982), *cert. denied,* 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982) (no reasonable expectation of privacy in communication transmitted by ham radio) *with People v. Sporleder,* 666 P.2d 135 (Colo.1983) (telephone subscriber has reasonable expectation of privacy in records of telephone numbers dialed).

Thus, whether there is a legitimate expectation of privacy in a particular case depends necessarily on the facts and circumstances, with the actual expectation manifested by a party being a question for the factfinder and the objective reasonableness of the expectation being determined for the particular circumstances as a matter of law. *See Angel v. Williams,* 12 F.3d 786 (8th Cir. 1993); *see also People v. Juarez,* 770 P.2d 1286 (Colo.1989); *United States v. Monie,* 907 F.2d 793 (8th Cir.1990); *United States v. Carroll,* 337 F.Supp. 1260 (D.D.C.1971) (objective reasonableness decided as a matter of law on motion to dismiss).

Here, the configuration of the restroom was not in dispute. The room was 7′ × 5′ with a door and one window located about five feet from the floor and opening on to a public alleyway. The restroom had no lock

or partitions, and it was undisputed that the window was open. As configured, the room could hold one or two people, and was not designed for high-traffic use. As the trial court noted, although located in a bar, it was less like a public restroom containing stalls and common areas, and more like a bathroom, or any enclosed room in a private residence or business.

## A.

■ Defendant does not dispute that persons engaged in a conversation in the restroom could manifest an expectation of privacy. He contends, however, that the trial court erred in determining that any such expectation of privacy in the restroom was legitimate. We disagree.

Specifically, defendant asserts that society should not recognize as reasonable an expectation of privacy from surveillance with a police transmitter under the circumstances here in which anyone outside the open alley window might overhear what was said in the restroom. However, clandestine police surveillance by use of an electronic device is substantively different from simply overhearing a conversation without contrivance or augmentation of the sound. *See* 1 W. LaFave, *Search & Seizure* § 2.2(e) at 437 (3d ed.1996) ("resort to [electronic] equipment to hear that which cannot be heard except by artificial means constitutes a search"). Thus, the potential for a bystander to overhear a restroom conversation is not dispositive of the privacy issues presented here.

While it does not appear that the question of privacy protection from warrantless electronic eavesdropping in restrooms has yet been decided, decisions addressing activities, rather than conversation in restrooms, and conversations in other locations are instructive. The reasonableness of an expectation of privacy depends both on the nature of the thing to be protected, conversation here, and the place. 1 W. LaFave, *Search & Seizure* § 2.2(e) at 442—43 (3d ed.1996) ("privacy of conversations ... is more deserving of constitutional protection, even when the conversations occur in a public place, than is privacy as to conduct which occurs in a public or semi-public place").

On the one hand, when words are conveyed to another in conversation, there may be no legitimate expectation that this conversation will be free from interception by the police, either with or without the aid of electronic devices. *See People v. Velasquez*, 641 P.2d 943 (Colo.1982), *cert. denied*, 459 U.S. 805, 103 S.Ct. 28, 74 L.Ed.2d 43 (1982) (carrying of an electronic transmitter or recording device by a police agent does not transform a permissible police investigation into an unconstitutional invasion of privacy); *People v. Strozzi*, 712 P.2d 1100 (Colo.App.1985), *cert. denied*, 476 U.S. 1105, 106 S.Ct. 1950, 90 L.Ed.2d 359 (1986) (no reasonable expectation that personal conversation will not be revealed to the police); *see also United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971).

But, it is generally accepted that there is a legitimate expectation of freedom from *visual* electronic surveillance by police in private restrooms or private areas of public restrooms. *People v. Triggs*, 8 Cal.3d 884, 106 Cal.Rptr. 408, 506 P.2d 232 (1973) (method of observation rather than physical features of public restroom critical to evaluation of search); *see generally* 1 W. LaFave, *Search & Seizure* § 2.4(c) (3d ed.1996). This expectation of privacy is objectively reasonable both because of the setting, *compare People v. Triggs, supra* (reasonable expectation of privacy in restroom) *with United States v. Hitchcock*, 467 F.2d 1107 (9th Cir.1972), *cert. denied*, 410 U.S. 916, 93 S.Ct. 973, 35 L.Ed.2d 279 (1973) (no reasonable expectation of privacy in prison), and because individuals can shield themselves from view.

The situation here is comparable to that of visual restroom surveillance. Since individuals in an otherwise private restroom area can easily adjust the volume of their conversation to exclude listeners, it is legitimate to expect that a particular conversation will not be electronically intercepted by the police. *Cf. People v. Hart, supra; Lee v. Florida*, 392 U.S. 378, 88 S.Ct. 2096, 20 L.Ed.2d 1166 (1968) (constitutional protections from search and seizure can attach without circumstances justifying perfect privacy). *People v. Sporleder, supra*, 666 P.2d at 141 ("privacy is not

a discrete commodity, possessed absolutely or not at all.").

Moreover, there can be a legitimate expectation of freedom from clandestine electronic interception of a conversation by police despite the fact that the police or others might hear a conversation unaided. *Cf. People v. Hart, supra* (no objectively reasonable expectation that conversation will not be overheard without electronic assistance by police in next motel room). And, simply because a person allows one conversation to be overheard by nearby individuals does not mean that the expectation of freedom from electronic reception by police is objectively unreasonable.

This is because the legitimacy of an expectation of privacy depends, in part, on the ability of persons to control their circumstances. *Cf. Katz v. United States, supra,* 389 U.S. at 351, 88 S.Ct. at 511, 19 L.Ed.2d at 582 ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."). And, without a warrant, police may not negate an otherwise reasonable expectation of privacy by surreptitiously eliminating such control. *See People v. Oates, supra* (crucial factor that grants a legitimate expectation of privacy is the right to exclude unwanted parties; government constitutionally constrained from adding to natural risks); *United States v. Carroll, supra* (purely objective determination that there was no reasonable expectation is only possible when conversation is overheard unaided and recorded with no contrivance and no augmentation).

Thus, while a listening device may be properly used to reveal information otherwise available by personal observation were a police agent actually present, *see People v. Velasquez, supra,* it may not be used without a warrant, when, as here, its value is in hearing what the observed party would not allow a visible observer to overhear. *See People v. Oates, supra; see also West Virginia Department of Health & Human Resources ex rel. Wright v. David L,* 192 W.Va.

663, 453 S.E.2d 646 (1994) (construing similar federal language and finding that recording communications violated statutes despite fact that some communications could be heard by neighbors outside); *Walker v. Darby,* 911 F.2d 1573 (11th Cir.1990) (postal worker who could be overheard by co-workers in his work area had objectively reasonable expectation of freedom from clandestine electronic interception and monitoring from a remote location); *State v. McDaniel,* 44 Ohio App.2d 163, 337 N.E.2d 173 (1975) (although customer may have been aware of or consented to possible intrusion by another customer or sales clerk, customer had a reasonable expectation that privacy will not be invaded from a concealed vantage point); *cf. People v. Oates, supra* (beeper placed in chemical drum violates reasonable expectation of privacy); *Simpson v. Simpson,* 490 F.2d 803 (5th Cir. 1974), *cert. denied,* 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974) (statute does not preclude electronic surveillance by marital partner, but intrusion by third party is qualitatively different).

Here, the trial court acknowledged that a third party outside in the alley could be in a position to overhear a conversation in the restroom. However, based on the location of the window in the room, any two people carrying on such conversation would realize that the window was open and know if someone walked by in the alley. Thus, the court reasoned, occupants could control interception of their conversation by lowering their voices or terminating their conversation if a third person appeared.

Accordingly, simply because someone could chance by the window or into the restroom and hear what was said did not negate the expectation of freedom from electronic surveillance in an otherwise private place. Thus, under the circumstances here, we agree with the trial court that the occupants of the restroom had an objectively reasonable expectation of privacy which could not be thwarted by use of a hidden transmitter that permitted surreptitious eavesdropping. *See People v. Oates, supra.*

### B.

Defendant argues further that the trial court erred by refusing to give the jury his

proposed instructions concerning the definition of "oral communication." We disagree.

The jury was instructed as to the elements of the offenses of eavesdropping and conspiracy to commit eavesdropping. According to *COLJI–Crim.* No. 31:08 (1983) (Notes on Use), when giving such instructions, a trial court is to include the applicable definition of "conversation" and "discussion." *See People v. Palmer, supra; People v. Hart, supra; see also People v. Blehm, supra.* Hence, the court gave a separate instruction defining "conversation" or "discussion" as "any oral communication uttered by a person believing that the communication is not subject to interception under circumstances justifying such belief."

Defendant raised no issue as to the accuracy or applicability of that definition. He proffered additional language, however, which would have added to the elements of the crimes this definition as well as the phrase "that at such place there was a reasonable expectation that such conversation or discussion would not be overheard." As discussed, defendant had filed a motion to dismiss the charges prior to trial on the grounds that there was no legitimate expectation of privacy for conversations in the restroom. He now argues that, because the trial court denied the motion, the issue of the existence of a reasonable expectation of privacy became a factual issue for determination by the jury, and this revised definition should have been included to present the issue to the jury as an element of the eavesdropping offenses. We disagree.

The inquiry as to the existence of a reasonable expectation of privacy asks whether a person has exhibited an actual expectation of privacy and whether society is prepared to recognize that expectation as legitimate. As previously discussed, the latter is a legal determination, resting solely within the province of the court. *See* 1 W. LaFave, *Search & Seizure,* § 2.1(d) at 391 (3d ed. 1996) ("The criteria for reasonable expectations must be abstracted from the flow of life, and it is the judge's task to find and articulate those societal standards.").

Here, the trial court properly did not decide the first, subjective portion of the analysis, whether the conversants exhibited an actual expectation of privacy through conduct; that is, whether persons in the restroom here, by carrying on a discussion in that particular location, demonstrated an intent to keep their conversation private. That was a determination of fact appropriate for the jury to decide.

Next, contrary to defendant's assertion, the trial court did not deny his motion to dismiss because there were issues—factual or otherwise—for the jury to decide as to the objective portion of the analysis. To the contrary, the trial court decided defendant's contention, properly, as a question of law. Assuming as fact that there was an *actual* expectation of privacy by occupants in the restroom, the trial court denied the motion because it determined as a matter of law that this expectation was justifiable.

Hence, to the extent that defendant's proffered instructions were intended to allow or could have permitted the jury to reconsider the trial court's legal determination, they were misleading and, therefore, were properly rejected. Furthermore, to the extent that this issue was properly submitted to the jury, the proposed instructions simply repeated or rephrased the definition of "oral communication" as set forth in *People v. Hart, supra,* and, thus, were unnecessary. *See* 1 W. La Fave, § 2.1(c) at 386 (3d ed.1996) (the phrase, "violated the privacy upon which he justifiably relied," can easily be read as encompassing a subjective element).

### C.

Defendant also contends that the trial court erred in preventing his expert from testifying that, in his opinion, any expectation of privacy in the restroom of the bar was unjustifiable. According to the offer of proof, the expert, trained in law and as a member of the Colorado bar, would view the restroom, and then, based on these observations and his "understanding of the case law," give his legal opinion as to whether there was a justifiable expectation of privacy in the restroom.

Defendant again argues that, since the trial court did not find that an expectation of

privacy was unreasonable as a matter of law, the question whether there was a reasonable expectation of privacy was given to the jury to decide. Therefore, he asserts, he should have been able to provide expert testimony on that issue. We disagree. The trial court properly excluded the expert witness' testimony as unnecessary and as improperly usurping the function of the court.

A trial court may admit expert testimony if it will assist the trier of fact to understand the evidence or to determine a fact in issue. CRE 702; *People v. Williams*, 790 P.2d 796 (Colo.1990). In exercising its discretion under CRE 702, the trial court should consider numerous factors, including the nature and extent of evidence in the case, the expertise of the proposed witness, the sufficiency and extent of the fundamental evidence upon which the expert witness' ultimate opinion is to be based, and the scope and content of the opinion itself. *Lanari v. People*, 827 P.2d 495 (Colo.1992).

Here, expert testimony was not needed simply to describe or interpret the setting of the crime—the jury heard ample testimony from numerous witnesses concerning these undisputed facts. *See* CRE 403 and 702.

And, to the extent that the expert was offered to give his opinion that as a matter of law there was no objectively justifiable expectation of privacy under the circumstances, as discussed, the testimony was unnecessary since it was not a question for the jury.

Further, the expert's proffered testimony was not directed to the issue of an actual expectation of privacy which otherwise could have been properly determined by the jury. Thus, the testimony offered would not have assisted the trier of fact in its role here to understand the evidence or to determine facts in issue. *See People v. Williams, supra; United States v. Sinclair*, 74 F.3d 753 (7th Cir.1996) (court has discretion to exclude expert testimony on legal issue when it is unnecessary or may confuse the jury).

Moreover, even when it is the role of the jury to make legal determinations, an expert testifying as to issues of law may not, as the offer of proof indicated would be done here, simply tell the jury what result to

reach. *See People v. Gaffney*, 769 P.2d 1081 (Colo.1989); *People v. Lanari*, 926 P.2d 116 (Colo.App. 1996); *see also United States v. Scop*, 846 F.2d 135 (2d Cir.), *modified on reh'g*, 856 F.2d 5 (2d Cir.1988) (expert testimony properly excluded where calculated to invade province of court to determine applicable law and instruct the jury).

## II.

Next, defendant contends that the trial court erred in failing to suppress statements that he made to the district attorney's investigator several weeks before his arrest. After a hearing, the trial court denied defendant's pretrial motion, finding that the statements were voluntary and that, because defendant was not in custody, there was no violation of the rule set forth in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Again, we perceive no error.

The only relevant inquiry in determining if a suspect is in custody is whether a reasonable person in the suspect's position would consider himself or herself deprived of freedom of action in a significant way at the time of the questioning. The determination whether an individual was in custody at the time of the questioning is a question of fact to be resolved by the trial court after assessing the credibility of witnesses and weighing their testimony. These findings will not be reversed on appeal if supported by competent evidence and if the correct legal standard was applied. *People v. Breidenbach*, 875 P.2d 879 (Colo.1994).

Here, with record support, the trial court found that, under the totality of the circumstances, defendant was not in custody. Specifically, the court determined that the investigator had told defendant the reason for the interview which lasted for 25—45 minutes. Further, the court noted that the defendant was a trained police officer in uniform whereas the investigator was in "street clothes," and defendant invited the investigator into the sheriff's private office and then sat in the sheriff's chair behind the desk during a "businesslike" discussion.

Although defendant does not appear to dispute that a reasonable person under these circumstances would not feel that his or her freedom of action had been significantly deprived, he faults the trial court for failing to give credit to testimony supporting a different version of the encounter. Contrary to defendant's assertion, the trial court specifically resolved credibility differences in favor of the investigator, a determination completely within its discretion. *See People v. LaFrankie,* 858 P.2d 702 (Colo.1993), *cert. denied,* 511 U.S. 1077, 114 S.Ct. 1663, 128 L.Ed.2d 379 (1994).

■ Similarly, we reject defendant's contention that his statements were involuntary or made as a result of an implied promise.

The trial court found, as pertinent to this issue, that this was an interrogation of an experienced police officer who was aware of his rights. No voice was significantly raised. The court also found significant that the interview took less than an hour, and took place at the sheriff's office. Further, the trial court specifically rejected the contention that there had been an implied promise that defendant would not be charged if he cooperated.

The factual findings have support in the record, and therefore, we will not disturb them on appeal. *See People v. Stewart,* 926 P.2d 105 (Colo.App. 1996).

### III.

■ Defendant also contends that the trial court erred in failing to suppress admission of the listening device, or "transmitter," recovered from the bar owner approximately one year after the crime. Specifically, defendant asserts that the device was inadmissible because it functioned to intercept and transmit communications only after being altered by the Colorado Bureau of Investigation (CBI). We disagree.

■ First, the threshold requirement that physical evidence be authentic is satisfied if there is evidence to support a finding that the item is what its proponent claims. CRE 901; *Washington v. People,* 158 Colo. 115, 405 P.2d 735 (1965), *cert. denied,* 383 U.S. 953, 86 S.Ct. 1217, 16 L.Ed.2d 215

(1966) (in order to be admissible, physical evidence must be shown to be what it purports to be, and the character must be as purported). Here, authenticity was established by evidence from two witnesses that the device was the transmitter removed from the window of the restroom of the bar. *See* CRE 901(b)(1); *People v. Esch,* 786 P.2d 462 (Colo.App.1989) (testimony of witnesses with knowledge of matters sufficient).

■ Once authenticity is established, defects in the physical evidence go to the weight of that evidence. *See* CRE 104; *Metro National Bank v. Parker,* 773 P.2d 633 (Colo.App.1989) (questions of authenticity go to weight of evidence after proper foundation laid for admission); *People v. Jenkins,* 717 P.2d 994 (Colo.App.1985) (errors in admitted documents go to weight not admissibility of evidence); *cf. People v. Ridenour,* 878 P.2d 23 (Colo.App.1994) (not error to admit weapon and holster similar to ones used in robbery).

Here, as the trial court noted, the testing procedure used by the CBI—inserting a paper clip into the back of the device to cause a connection between the battery and the electrical contact—did not alter the "character" of the transmitter. Furthermore, the trial court specifically found with record support that the prosecution's manipulation of the device did not constitute destruction of or failure to preserve evidence that would constitute suppression of evidence in violation of due process. *See People v. Greathouse,* 742 P.2d 334 (Colo.1987) (failure to preserve blood samples).

Thus, any effect of the testing procedure simply was a circumstance to be considered by the jury in weighing the evidence.

### IV.

■ Finally, defendant contends that the trial court erred in precluding cross-examination on the crime of bigamy to impeach the credibility of a witness. The witness, a named defendant at the time of the court's suppression order, subsequently pled guilty to a lesser charge prior to trial. We perceive no error in the trial court ruling.

Specific instances of the conduct of a witness may, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness concerning his or her character for truthfulness or untruthfulness. CRE 608(b); *see United States v. Beros,* 833 F.2d 455 (3d Cir.1987) (trial court has discretion to admit evidence of false statements concerning bigamy to show untruthfulness).

The decision whether to allow the inquiry is within the discretion of the trial court. However, unproven accusations of criminal behavior do not by themselves raise an inference of improper actions. Thus, for example, an arrest or a pending criminal charge generally is an improper subject for impeachment. *See People v. Pratt,* 759 P.2d 676 (Colo.1988).

Here, as indicated in its objection to the witness' motion *in limine,* the defense sought to cross-examine the witness concerning the crime of bigamy in order to impeach his credibility. The trial court determined, however, that even if bigamy is an offense which relates to truthfulness, the witness had been neither convicted, arrested, nor charged with such offense. Nor was there any evidence of an agreement by the prosecutor not to file such charges against this witness in exchange for his testimony.

Moreover, even if it were within the discretion of the trial court here to permit questioning of the witness as to the act of bigamy, it also was well within its discretion to exclude it as being more prejudicial than probative. *See People v. Pratt, supra; People v. Hulsing,* 825 P.2d 1027 (Colo.App. 1991); CRE 403, 404, and 608(b); *see also State v. Larrimore,* 340 N.C. 119, 456 S.E.2d 789 (1995).

The judgment is affirmed.

BRIGGS and TAUBMAN, JJ., concur.