COLORADO COURT OF APPEALS                                    **2017COA129**

---

Court of Appeals No. 15CA0410
Adams County District Court No. 13CR1830
Honorable John E. Popovich, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Victor Manuel Mendez,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE ROMÁN
Navarro and Nieto*, JJ., concur

Announced October 19, 2017

---

Cynthia H. Coffman, Attorney General, Rebecca A. Adams, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Meredith Osborne, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1     Defendant, Victor Manuel Mendez, appeals the judgment of conviction entered after a jury found him guilty of distribution of a schedule II controlled substance.  Mendez asserts the use of video surveillance inside his home constituted an unreasonable search in violation of the Fourth Amendment to the United States Constitution.  In a case of first impression in Colorado, we conclude that the use of video surveillance by a confidential informant (CI) when the CI is invited into the surveilled area does not violate the Fourth Amendment.  Mendez also challenges as abuses of discretion the district court's remedy for a discovery violation and the jury's unfettered access to certain evidence during deliberations.  We affirm.

## I.     Background

¶ 2     A CI approached a police investigator with a potential target for a controlled drug buy.  The CI informed the investigator that he knew someone with several pounds of methamphetamine.  The CI had previously worked with Colorado drug task forces in exchange for financial compensation.  But in this case, the CI also inquired whether the investigator would be able to help him with his

immigration status. The investigator said he would look into the request but never got back to the CI.

¶ 3 In the meantime, the investigator arranged for the CI to purchase methamphetamine from Mendez in a controlled drug buy. Prior to the buy, police strip-searched the CI and found no drugs on his person. With the CI's consent, police equipped him with an audio recording wire, as well as a concealed video camera. The video camera was capable of recording both audio and video transmissions. The investigator then drove the CI to Mendez's apartment, gave him $100.00 to purchase methamphetamine, and waited in a nearby vehicle.

¶ 4 During the controlled buy, audio from the CI's wire was transmitted simultaneously to the police. The audio and video transmissions from the video camera were not transmitted simultaneously, although police were able to view the video recording after the buy had been completed.

¶ 5 When the CI returned to the police vehicle after the buy, he gave the investigator a plastic container of methamphetamine and $80.00 in cash, was taken to the police station, and was strip-

2

searched a second time.  The People then charged Mendez with distribution of a schedule II controlled substance.

¶ 6     Prior to trial, Mendez filed a motion to suppress evidence obtained during the CI's entry into his apartment, arguing that the use of video surveillance constituted an unlawful search of his home under the Fourth Amendment.  The district court denied the motion, concluding that because Mendez consented to the CI's entry into his home, the Fourth Amendment was not implicated.  Mendez did not challenge the evidence as an unlawful search under the Colorado Constitution.

¶ 7     At trial, the People presented testimonial evidence from the CI and the investigator, as well as the video recording (which included audio), several photos taken from the video recording, and a written transcript of the audio taken from the video recording.  The transcript included the conversation held between Mendez and the CI, translated from Spanish into English.  In the conversation, Mendez stated he did not have $100.00 worth of methamphetamine but could sell $20.00 worth of methamphetamine to the CI.  A photo from the recording showed Mendez, wearing a red and white striped shirt, in his apartment.  Another photo showed a man

3

wrapping something in plastic, and, while his face was not visible, the man was wearing the same shirt.

## II. Analysis

¶ 8 Mendez contends his conviction must be reversed because (A) the video recording of the controlled buy should have been suppressed as the result of an unreasonable search under the Fourth Amendment; (B) the district court failed to provide an adequate remedy for a discovery violation; and (C) the district court abused its discretion in failing to limit the jury's access to the video recording and transcript during deliberations. We discern no reversible error.

## A. Warrantless Search

¶ 9 According to Mendez, the district court erred in denying his motion to suppress the video recording of the controlled drug buy. Specifically, he asserts the use of video surveillance inside his home constituted an unreasonable search in violation of the Fourth

Amendment.[1]  We are not persuaded.  Rather, we agree with several

federal circuits that have addressed this issue.

### 1.    Standard of Review

¶ 10    Our review of a district court's denial of a motion to suppress

presents mixed questions of law and fact.  *People v. Martin*, 222

P.3d 331, 334 (Colo. 2010).  Although we defer to the district court's

factual findings where there exists sufficient evidence in the record

to support them, we review the district court's conclusions of law de

novo.  *Id.*

### 2.    Applicable Law

¶ 11    The Fourth Amendment to the United States Constitution

prohibits unreasonable searches and seizures.  U.S. Const. amend.

IV; *People v. Allison*, 86 P.3d 421, 426 (Colo. 2004).  The central

inquiry in determining whether the Fourth Amendment applies "is

---

[1] On appeal, Mendez also raises a claim under the Colorado
Constitution; however, his motion to suppress before the district
court was limited to arguments under the Fourth Amendment.
Appellate courts should not reach Colorado Constitutional
arguments raised for the first time on appeal.  *Martinez v. People*,
244 P.3d 135, 139 (Colo. 2010).  Because Mendez did not draft his
motion "with sufficient particularity to draw the [district] court's
attention to a Colorado Constitutional violation," our review is
limited to his federal constitutional claim.  *Id.*

whether the defendant had a reasonable expectation of privacy from government intrusion in the area searched." *People v. Galvadon*, 103 P.3d 923, 924 (Colo. 2005).

¶ 12     "As the Supreme Court has recognized, '[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.'" *Hoffman v. People*, 780 P.2d 471, 474 (Colo. 1989) (alteration in original) (quoting *Katz v. United States*, 389 U.S. 347, 351 (1967)). "This principle applies with equal force to statements knowingly exposed to government informants." *United States v. Longoria*, 177 F.3d 1179, 1182 (10th Cir. 1999).

¶ 13     Thus, a "defendant does not have a justifiable and constitutionally protected expectation that a person with whom he is conversing will not then or later reveal the conversation to police." *People v. Strozzi*, 712 P.2d 1100, 1102 (Colo. App. 1985). Likewise, an informant "who conceals his police connections may either report *or record* a conversation with a defendant without violating defendant's Fourth Amendment rights." *Id.* (emphasis added); *see also United States v. White*, 401 U.S. 745, 749 (1971) (holding that a defendant has no reasonable expectation of privacy

6

regarding conversations held in his home and audio-recorded by a third party).

### 3. Discussion

¶ 14　Mendez concedes that audio surveillance by a CI welcomed into his home does not violate the Fourth Amendment. But he urges that video surveillance is different, as it allows police to "essentially gain virtual entry into the apartment in the form of a video camera." Thus, according to Mendez, the CI's use of video surveillance in this case was an unreasonable search.[2]

¶ 15　We disagree and note, as a federal circuit court observed in affirming a district court's language, "every federal appellate court to decide the issue [has] concluded that there is no constitutionally relevant distinction between secret audio and video recordings when the informant gathers the information from a location where he is lawfully entitled to be." *United States v. Thompson*, 811 F.3d 944, 947 (7th Cir. 2016) (affirming district court's findings in *United States v. Thompson*, No. 14-CR-90-WMC, 2015 WL 667925, at *8

---

[2] Mendez also argues that the CI in this case was an agent of the police. The People do not dispute this point.

(W.D. Wis. Feb. 17, 2015)); *see also United States v. Brathwaite*, 458 F.3d 376, 380 n.4 (5th Cir. 2006) (collecting cases).

¶ 16    For example, in *Brathwaite*, the Fifth Circuit held that a defendant forfeited any privacy interests he may have had when he invited an informant, who videotaped the defendant's counterfeiting activities, into his home.  458 F.3d at 380-81.  In so concluding, the court applied the same rationale to a CI's observations as has been applied to conversations with a CI: "[J]ust as [the defendant] gave up any expectation of privacy in the things that he allowed [the CI] to hear, [the defendant] also gave up any expectation of privacy in the things that he allowed [the CI] to see."  *Id.* at 381 (quoting *United States v. Lee*, 359 F.3d 194, 201-02 (3d Cir. 2004)).

¶ 17    This logic tracks the reasoning applied by the Supreme Court with regard to the Fourth Amendment and electronic surveillance.  *See, e.g., White*, 401 U.S. at 751 (holding that, just as an informant "may write down for official use his conversations with a defendant and testify concerning them, . . . no different result is required if the agent . . . records them with electronic equipment which he is carrying on his person").  As the Third Circuit observed: "The principle underlying the governing Supreme Court cases is that if a

8

defendant consents to the presence of a person who could testify about a meeting and is willing to reveal what occurs, the defendant relinquishes any legitimate expectation of privacy with respect to anything . . . the testimony could cover." *Lee*, 359 F.3d at 201 (finding no "constitutional distinction between consensual audio and video surveillance").

¶ 18    The Second Circuit adopted the same approach in *United States v. Davis*, 326 F.3d 361, 363 (2d Cir. 2003). There, "videotape evidence, which merely showed scenes viewable by [a CI]" was not subject to the Fourth Amendment because "the hidden camera merely memorialized what [the CI] was able to see as an invited guest." *Id.* at 366.

¶ 19    We agree with these federal circuits and conclude that the use of video surveillance through the CI, in this case, did not violate the Fourth Amendment. Mendez invited the CI into his apartment for the purpose of engaging in a drug transaction. Thus, the CI gathered "information from a location where he [was] lawfully entitled to be." *Thompson*, 811 F.3d at 947. "That the informant recorded his observations on video did not transform the consensual encounter into a search for purposes of the Fourth

9

Amendment." *Id.* at 949. Because Mendez consented to the CI's presence in his home, he gave up any reasonable expectation of privacy in what the CI could observe or visually record. *See Brathwaite*, 458 F.3d at 381.

¶ 20 We recognize that a division of this court observed, in *People v. Lesslie*, 939 P.2d 443, 447 (Colo. App. 1996), that "it is generally accepted that there is a legitimate expectation of freedom from *visual* electronic surveillance by police in private restrooms or private areas of public restrooms." But, as that division observed, "whether there is a legitimate expectation of privacy in a particular case depends necessarily on the facts and circumstances." *Id.* at 446. Unlike electronic surveillance by police in private restrooms or private areas of public restrooms, here we conclude that, under the circumstances, Mendez had no legitimate expectation of privacy in his home. The facts and circumstances in *Lesslie* involved conversations in a restroom recorded by a hidden listening device on the windowsill. *Id.* at 445. By contrast, here, Mendez consented to the presence of a CI who observed and recorded a drug transaction in Mendez's home. Indeed, the *Lesslie* court recognized that electronic surveillance "may be properly used to reveal

10

information otherwise available by personal observation were a police agent actually present." *Id.* at 448.

¶ 21    The other cases Mendez cites as support for his argument that video surveillance is constitutionally different from audio surveillance each rely on state constitutional provisions that are inapplicable here. *See Commonwealth v. Blood*, 507 N.E.2d 1029, 1032-33, 1038 (Mass. 1987) (noting that "warrantless surveillance with 'one party consent' has been held to lie beyond the protective reach of the Fourth Amendment to the United States Constitution," but concluding that the same is not true under article 14 of the Massachusetts Constitution); *Commonwealth v. Dunnavant*, 63 A.3d 1252, 1255 n.2 (Pa. Super. Ct. 2013) (declining to apply federal precedent to video surveillance by a CI because "Pennsylvania courts are not bound by the decisions of inferior federal courts where the case specifically concerns Pennsylvania law"), *aff'd by an equally divided court*, 107 A.3d 29 (Pa. 2014); *State v. Mullens*, 650 S.E.2d 169, 188 (W. Va. 2007) (holding that warrantless electronic surveillance through an informant violates the West Virginia Constitution, which may "require higher standards of protection

than afforded by the Federal Constitution" (quoting *Pauley v. Kelly*, 255 S.E.2d 859, 861 (W. Va. 1979))).

¶ 22 We conclude the CI's video surveillance of Mendez's home was not an unreasonable search under the Fourth Amendment. Accordingly, the district court properly denied the motion to suppress the resulting video recording.

## B. Discovery Violation

¶ 23 Mendez next asserts the district court abused its discretion by failing to provide an adequate remedy for a discovery violation. He argues the prosecution's failure to disclose a conversation between the CI and a police investigator about the Department of Homeland Security constituted a violation of his constitutional rights under *Brady v. Maryland*, 373 U.S. 83 (1963), and that the district court's chosen remedy deprived him of a fair trial. We are not persuaded.

## 1. Additional Facts

¶ 24 At trial, the CI testified that he received $100.00 for his participation in the controlled drug buy. During cross-examination, he further testified that he was not a United States citizen and he had notified the investigator of this fact.

¶ 25    The People then called the investigator.  When asked whether any other arrangements were made, the investigator testified:

> We had discussed, if [the CI was] able to do much larger amounts, possibly working with Homeland Security.  I know we've had other informants that we've done that for.  But we never got to that point.

Then, when asked if the CI was promised any help with immigration, the investigator testified that "[h]e was not promised, no."

¶ 26    Based on the prosecution's failure to disclose the discussion regarding Homeland Security, defense counsel moved to dismiss the charge on the basis of (1) prosecutorial misconduct; (2) a Crim. P. 16 discovery violation; and (3) a *Brady* violation.  Specifically, defense counsel argued Mendez was entitled to exculpatory information, and that this included the investigator's discussion with the CI regarding possible help with immigration.  She further noted that she had not had an opportunity to cross-examine the CI on this issue.

¶ 27    The district court denied the motion to dismiss because there was no showing of prosecutorial misconduct, and it made no findings as to whether there was a *Brady* violation.  It did, however,

find a Rule 16 discovery violation. As a sanction for the discovery violation, it ordered the investigator to make himself available for an interview with defense counsel to determine the scope of his representations to the CI.

¶ 28    Defense counsel also requested, however, that the CI be subject to recall for cross-examination, arguing that his testimony about "what information was provided to him . . . could be contrary to what the detective [would say], and that would be impeachment, and that would go to his credibility."

¶ 29    The district court denied the request, and then it recessed for half an hour to allow defense counsel to interview the investigator.

¶ 30    When trial resumed, the investigator testified that he had one conversation with the CI about providing help with immigration. He further testified that he "told [the CI] he would look into it" and that, although he spoke with another investigator who had worked with Homeland Security in the past, he never informed the CI of that conversation.

¶ 31    At the close of the prosecution's case, defense counsel again moved to dismiss the charges or, alternatively, for a mistrial. She argued Mendez was prejudiced because the prosecution's prior

14

disclosure of the immigration conversation "would have changed the cross-examination" of the CI.  The district court again denied the motion.

## 2.      Standard of Review

¶ 32      We review both a district court's resolution of discovery issues and its decision to impose sanctions for discovery violations for an abuse of discretion.  *People v. Bueno*, 2013 COA 151, ¶ 10 (*cert. granted on other grounds*, Nov. 24, 2014).

¶ 33      In determining the appropriate sanction, a district court must exercise its discretion "with due regard for the purposes of the discovery rules themselves and the manner in which those purposes can be furthered by discovery sanctions."  *People v. Lee*, 18 P.3d 192, 196 (Colo. 2001).  Except where the sanction is designed to deter future misconduct, "the goal must be to cure any prejudice resulting from the violation."  *Id.* at 197.  In other words, the district court should strive to "restore a 'level playing field,'" without affecting the evidence or the merits of the case.  *Id.* (quoting *People v. Dist. Court*, 808 P.2d 831, 837 (Colo. 1991)).

¶ 34      "Because of the multiplicity of considerations involved and the uniqueness of each case, . . . an order imposing a discovery

sanction will not be disturbed on appeal unless it is manifestly arbitrary, unreasonable, or unfair." *Id.* at 196.

¶ 35 We review trial errors in resolving *Brady* violations for constitutional harmless error. *See Brady*, 373 U.S. at 87 (holding that "suppression by the prosecution of evidence favorable to an accused upon request *violates due process*") (emphasis added). Under this standard, reversal is required unless we are "able to declare a belief that [the error] was harmless beyond a reasonable doubt." *Hagos v. People*, 2012 CO 63, ¶ 11 ("In other words, we reverse if 'there is a reasonable *possibility* that the [error] might have contributed to the conviction.'" (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967))) (alteration in original).

¶ 36 We review non-constitutional errors that were preserved at trial for harmless error. *Id.* at ¶ 12. Under this standard, reversal is required only if the error "substantially influenced the verdict or affected the fairness of the trial proceedings." *Id.* (quoting *Tevlin v. People*, 715 P.2d 338, 342 (Colo. 1986)).

### 3. Legal Standards

¶ 37 "It is well-settled that a prosecuting attorney has both a statutory and a constitutional obligation to disclose to the defense

16

any material, exculpatory evidence he possesses." *Salazar v. People*, 870 P.2d 1215, 1220 (Colo. 1994).

¶ 38    In its landmark *Brady v. Maryland* decision, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. "There are three components to a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Bueno*, ¶ 12 (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

¶ 39    Under Crim. P. 16(I)(a)(2), a prosecutor "shall disclose to the defense any material or information within his or her possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce the punishment therefor." This discovery rule "incorporates the holding of *Brady v. Maryland*." *People v. Bradley*, 25 P.3d 1271, 1276 (Colo. App. 2001); *see also Bueno*, ¶ 11 ("Under Crim. P. 16(I)(a)(2), prosecutors in Colorado are

17

obligated to disclose *Brady* material to an accused . . . ." (quoting *People v. Dist. Court*, 790 P.2d 332, 338 (Colo. 1990))).

### 4. Discussion

¶ 40 Mendez argues the district court abused its discretion by imposing an inadequate remedy for the prosecution's failure to disclose the fact that the CI asked for immigration help and the investigator said he would look into it. Although Mendez argues this was a *Brady* violation, the district court never ruled whether a *Brady* violation occurred. Rather, it found a Rule 16 discovery violation and imposed a sanction accordingly. Mendez argues the district court's chosen sanction — allowing defense counsel to interview the investigator — did not make up for his inability to cross-examine the CI regarding his motive for participating in the controlled buy.

¶ 41 We agree that the district court's discovery sanction was inadequate in this case because Mendez was given no opportunity to cross-examine the CI about whether *he believed* he would receive immigration support from Homeland Security for his willingness to participate in the controlled buy. That belief could have been relevant to the CI's motive, regardless of the investigator's memory

18

of the conversation. And, the remedy the district court provided —
an opportunity for defense counsel to interview the investigator
about the conversation — did not cure that potential prejudice.

¶ 42    Nevertheless, even under the heightened harmless beyond a
reasonable doubt standard, applied to *Brady* violations, we
conclude the district court's error does not warrant reversal.

¶ 43    To begin with, despite his inability to cross-examine the CI
about whether his motive for helping the police was to secure
immigration support from Homeland Security, Mendez
acknowledges, in his reply brief, that "the defense had quite
successfully called [the CI's] credibility into doubt" by the end of
trial.

¶ 44    Moreover, overwhelming evidence at trial supported Mendez's
conviction, including the following:

- a video recording taken by the CI during the controlled
  buy at Mendez's apartment, which we have already ruled
  was admissible;

- a photo from the recording showing Mendez's face;

- another photo of a person wearing the same clothing as
  Mendez and packaging something in plastic;

- the investigator's testimony that the CI handed him a plastic package containing methamphetamine after the controlled buy;

- the CI's testimony that he purchased methamphetamine from Mendez during the controlled buy; and

- testimony from both the investigator and the CI that the CI was strip-searched, and no drugs were found, before he was given $100.00 and went in for the controlled buy and that, after the buy, the CI gave the investigator $20.00 worth of methamphetamine and $80.00 in cash and was strip-searched a second time.

¶ 45 In light of this overwhelming evidence, we conclude the error was harmless beyond a reasonable doubt. That is, even assuming the prosecutor's failure to disclose constituted a *Brady* violation, we conclude there is no reasonable possibility that the district court's failure to provide an adequate sanction "might have contributed to the conviction." *Hagos,* ¶ 11 (quoting *Chapman,* 386 U.S. at 24).

¶ 46 This means, of course, any error in the district court's issuance of a sanction under Rule 16 was necessarily harmless under the lesser non-constitutional standard. *See id.* at ¶ 12

(noting that reversal under non-constitutional harmless error review "is more difficult to obtain . . . because this standard requires that the error impair the reliability of the judgment of conviction to a greater degree than the constitutional harmless error standard requires").

### C.   Jury Access to Evidence During Deliberations

¶ 47    Finally, Mendez argues the district court abused its discretion in failing to limit the jury's access to the video recording and transcript during deliberations.  We discern no abuse of discretion.

#### 1.   Additional Facts

¶ 48    At the conclusion of trial, the People requested that the video recording and written transcript go back with the jury for its use during deliberations.  Mendez objected, arguing the jury would place undue emphasis on this evidence if given unfettered access.

¶ 49    The district court declined to limit the jury's access to the evidence, finding that the video recording and transcript were "part and parcel of the same" non-testimonial evidence and that two photos from the video — to which the jurors had unlimited access — had already been admitted.

## 2. Standard of Review

¶ 50   "Control over the use of exhibits during jury deliberations rests firmly within the [district] court's discretion, and we may not substitute our own judgment for that of the [district] court merely because we would have reached a different conclusion." *Rael v. People*, 2017 CO 67, ¶ 15.  Thus, "a court's refusal to exclude or otherwise limit the use of an exhibit will generally be overturned only when it is manifestly arbitrary, unreasonable, or unfair." *DeBella v. People*, 233 P.3d 664, 667 (Colo. 2010).

## 3. Applicable Law

¶ 51   District courts must ensure that the evidence provided during deliberations is not used in such a manner "that there is a likelihood of it being given undue weight or emphasis by the jury." *Frasco v. People*, 165 P.3d 701, 706 (Colo. 2007) (Martinez, J., specially concurring) (quoting *Settle v. People*, 180 Colo. 262, 264, 504 P.2d 680, 681 (1972)).  In doing so, the district court must "assess whether the exhibit will aid the jury in its proper consideration of the case, and even if so, whether a party will nevertheless be unfairly prejudiced by the jury's use of it." *DeBella*, 233 P.3d at 668 (quoting *Frasco*, 165 P.3d at 704-05).

¶ 52    This rule flows from the observation that "honoring requests for access in the jury room to witnesses' out-of-court statements effectively puts the witness in that room during deliberations and creates a risk that the jury will place undue weight or emphasis on the out-of-court statements." *Rael*, ¶ 22. It is error, therefore, "for a [district] court to allow the jury, during deliberations, 'to engage in the unsupervised, and perhaps repetitive, viewing' of a videotape" containing testimonial evidence. *People v. Aponte*, 867 P.2d 183, 188 (Colo. App. 1993) (quoting *People v. Montoya*, 773 P.2d 623, 626 (Colo. App. 1989)).

¶ 53    However, "[t]he same danger of undue emphasis does not inhere in non-testimonial evidence." *Rael*, ¶ 23. Thus, "courts in Colorado and other jurisdictions have consistently upheld juror access to such non-testimonial exhibits." *Id.* (collecting cases).

### 4.    Discussion

¶ 54    Mendez contends the district court abused its discretion in giving the jury unfettered access to the video recording and transcript on the basis of this evidence being non-testimonial — that is, he argues a district court is required to retain control over all jury exhibits, whether they are testimonial or not.

23

¶ 55     Our supreme court's decision in *Rael*, however, makes clear that a district court need not limit juror access to non-testimonial evidence. *Id.* (quoting *Chambers v. State*, 726 P.2d 1269, 1275 (Wyo. 1986), for the proposition that "[n]ontestimonial exhibits with [verbal] content, such as . . . recordings of criminal acts which are verbal in nature, are generally allowed to go into the deliberations").[3]

¶ 56     Mendez does not dispute that the video recording and transcript admitted in this case were non-testimonial. *See Aponte*, 867 P.2d at 188 (holding that a video recording taken by a CI and its corresponding transcript were "non-testimonial in character"). His sole contention is that the district court misapplied the law when it distinguished between testimonial and non-testimonial evidence. We conclude that "the jury was entitled to access the non-testimonial [evidence] because [it] did not present the same risk

---

[3] Although *Rael v. People* was decided after briefing in this case, it merely clarified the supreme court's prior holdings on this issue — that its analysis in *DeBella v. People*, 233 P.3d 664 (Colo. 2010), "hinged on the nature of the exhibits at issue, namely, the victim's videotaped, out-of-court statements." 2017 CO 67, ¶ 22; *see also DeBella*, 233 P.3d at 666 (noting that because a cited opinion merely clarified and "reaffirmed the vitality of" a prior decision, it "did not set forth a new rule of law on this issue").

of undue emphasis as do videos documenting witnesses' out-of-court, testimonial statements." *Rael*, ¶ 2. Because the district court properly applied this controlling precedent, we discern no abuse of discretion in its decision to grant the jury unfettered access to the video recording and transcript in this case. *See id.* at ¶ 24.

## III. Conclusion

¶ 57 The judgment is affirmed.

JUDGE NAVARRO and JUDGE NIETO concur.