**UNITED STATES of America,**
**Appellee,**

v.

**Leon DAVIS, also known as Flash,**
**Defendant–Appellant.**

**No. 02–1569.**

United States Court of Appeals,
Second Circuit.

Argued: April 2, 2003.

Decided: April 22, 2003.

Rosemary Nidiry, Assistant United States Attorney, (Laura Grossfield Birger, Assistant United States Attorney, of counsel) for James B. Comey, United States Attorney for the Southern District of New York, New York, NY, for Appellee.

Theodore S. Green, Green & Willstatter, White Plains, NY, for Defendant–Appellant.

Before: NEWMAN, POOLER, KATZMANN, Circuit Judges.

KATZMANN, Circuit Judge.

Defendant-appellant Leon Davis was convicted, following a jury verdict, in the Southern District of New York (Colleen McMahon, *Judge* ) of distributing and possessing with intent to distribute five grams or more of a substance containing a detectable amount of "crack" cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B). At trial, the government offered a videotape of a controlled narcotics buy in which Davis sold "crack" cocaine to a confidential government informant. This videotape evidence was obtained through a camera hidden in the jacket of the informant and depicted a transaction that occurred after Davis invited the informant into his residence. Davis argues on appeal that this videotape surveillance violated his Fourth Amendment right to be free from unreasonable searches and seizures and that the District Court erred in failing to suppress this evidence. We disagree. It is firmly established that audio recordings, obtained without a warrant and through hidden recording devices by an invited guest, do not violate the Fourth Amendment. *See, e.g., United States v. White,* 401 U.S. 745, 749,

753, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); *Lopez v. United States,* 373 U.S. 427, 438–40, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963). The rationales for permitting warrantless audio recordings, as articulated in *White* and *Lopez,* apply with equal force to the video surveillance at issue in this case. We therefore extend the rule of *White* and *Lopez* to video recordings that capture images visible to a consensual visitor and hold that Davis's Fourth Amendment right to be free from unreasonable searches and seizure was not violated.

## BACKGROUND

In 2000, the Drug Enforcement Agency ("DEA") was conducting an ongoing investigation of narcotics trafficking in Spring Valley, New York. In the course of this investigation, the DEA relied on the services of Edwardo Lorenzo, a confidential informant, and maintained Lorenzo's residence at 128 Lake Street. Lorenzo's role in the investigation entailed arranging narcotics purchases from suspected distributors in the area.

On December 26, 2000, the DEA directed Lorenzo to call an individual named "Jerry" from whom Lorenzo previously had obtained narcotics. Although "Jerry" was not home when Lorenzo called, a woman later identified as defendant Mary Owen answered the phone and told Lorenzo she knew about him from "Jerry." Owen informed Lorenzo that she would be able to obtain whatever he needed and instructed Lorenzo to call her again later that day. Law enforcement agents then met with Lorenzo to prepare for the narcotics transaction. The agents provided Lorenzo with money to purchase the drugs, a small audio transmitter, which could be clipped to a belt or held in a pocket, and a portable video camera concealed in Lorenzo's jacket. The electronic devices were intended to transmit images and sounds to a nearby government vehicle during the drug transaction.

The controlled narcotics purchase occurred later that day. Owen instructed Lorenzo to come to 35 Rose Avenue, Davis's residence and the address where Lorenzo had met "Jerry" for past narcotics purchases. Upon arrival, Lorenzo informed Owen that he wanted to buy ten grams of cocaine. After making a telephone call, Owen stated that her source was on his way to the house. Davis arrived shortly thereafter. Lorenzo tried to persuade Owen and Davis to go to his apartment to make the exchange, claiming to have left his money there. In actuality, the agents had instructed Lorenzo to attempt to conduct the transaction in his apartment because it was wired with hidden video cameras and because it would be easier to ensure Lorenzo's safety there. Only Owen, however, agreed to go to Lorenzo's apartment.

After retrieving the money from Lorenzo's apartment, Lorenzo and Owen returned to 35 Rose Avenue to consummate the drug deal with Davis. While inside the house, Lorenzo handed Davis $500, and Davis gave Lorenzo a tinfoil package containing a crystallized substance later determined by the DEA laboratory to contain approximately 9.5 grams of cocaine base. The transaction was captured by Lorenzo's hidden video camera and transmitted to a nearby vehicle where law enforcement agents watched.

Davis and Owen were charged in a one-count Indictment with distributing and possessing with intent to distribute five grams and more of a controlled substance containing a detectable amount of cocaine base in a form commonly referred to as "crack." *See* 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B). On September 17, 2001, Davis moved to suppress the video surveillance evidence on the ground that the evi-

dence was the fruit of an unlawful, warrantless search and seizure in violation of the Fourth Amendment.[1] Davis argued that Lorenzo's "secret transmission of images from inside the home to a remote location was a 'sense-enhancing technology' which is 'not in general public use' and which violated Davis' right to be free [from] unlawful searches and seizures." Davis explained,

A person in the privacy of his home generally has a reasonable expectation that video images of the goings on inside will not be secretly transmitted to some remote location for other persons to view. Moreover, people usually have that expectation even when guests are invited into their home. It is not generally thought that such guests will be outfitted with body cameras that will enable them to transmit images from inside the home to the outside, much less that those images will be recorded for future viewing by third parties.

Davis also argued that a video camera should be treated differently from an audio transmitter because the camera can capture more sensory detail than a microphone.

In a decision dated October 17, 2001, the District Court denied the motion to suppress. The court explained that "[b]y voluntarily admitting [Lorenzo] into 35 Rose Avenue, defendants relinquished whatever expectation of privacy they might otherwise have enjoyed while in that residence." The court therefore concluded that, because "the defendants have no reasonable expectation of privacy in the statements they made while in the presence of [Lorenzo], or the objects that they showed [Lorenzo], they can have no expectation of privacy in the audio or visual recordings of those statements or objects."

Owen pleaded guilty to the sole count of the Indictment on December 27, 2001, and the District Court sentenced her to time served on January 16, 2002. Davis's trial commenced on January 7, 2002 and lasted four days. The government's evidence consisted of the testimony of Lorenzo, the law enforcement agents who facilitated the surveillance, and the forensic chemist who examined the substance that Davis sold to Lorenzo. The government also introduced a videotape of the drug transaction recorded by the camera hidden in Lorenzo's jacket, as well as a videotape recorded by the camera concealed in Lorenzo's apartment. On January 10, 2000, the jury returned a guilty verdict. Davis was sentenced to a term of 92 months' imprisonment, reflecting a downward departure from the applicable guidelines range of 262 to 327 months because the District Court determined that the case falls outside the heartland of career offender cases. The court also imposed a supervised release term of two years and a mandatory $100 special assessment.

## DISCUSSION

Davis argues on appeal that the videotape evidence of the December 26, 2000 narcotics transaction was the fruit of an unconstitutional search and thus should have been suppressed. While Davis concedes that Lorenzo was lawfully on his premises, he argues that the government violated his Fourth Amendment rights by using "sense-enhancing technology" that is "not in general public use," citing *Kyllo v. United States*, 533 U.S. 27, 34, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001), as support. The government responds that the videotape evidence was the product of a consensual taping by a person invited into Davis's residence and therefore no Fourth Amendment violation occurred.

---

**1.** The District Court granted Owen permission to join in Davis's motion to suppress.

A district court's factual findings underlying its denial of a motion to suppress are reviewed for clear error and viewed in the light most favorable to the government, while the legal issues the court addresses are reviewed *de novo.* *United States v. Mendez,* 315 F.3d 132, 135 (2d Cir.2002); *United States v. Casado,* 303 F.3d 440, 443 (2d Cir.2002). Because the parties do not dispute the relevant facts, but rather whether those facts gave rise to an unlawful search and seizure, we review the District Court's ruling *de novo.*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Warrantless searches are *per se* unreasonable under the Fourth Amendment unless they fall under one of several recognized exceptions. *Casado,* 303 F.3d at 443; *see Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One of these exceptions encompasses "[w]hat a person knowingly exposes to the public, even in his own home or office." *Katz,* 389 U.S. at 351, 88 S.Ct. 507. Therefore, what a person knowingly exposes to the public through an open door or window does not receive Fourth Amendment protection, yet what a person tries to keep private, even in a public place, may be entitled to constitutional protection. *United States v. Paulino,* 850 F.2d 93, 96 (2d Cir.1988) (citing *Katz,* 389 U.S. at 351–52, 88 S.Ct. 507), *cert. denied,* 490 U.S. 1052, 109 S.Ct. 1967, 104 L.Ed.2d 435 (1989).

Accordingly, a defendant does not have a privacy interest in matters voluntarily revealed to a government agent, including a confidential informant. *Hoffa v. United States,* 385 U.S. 293, 302, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *see United States v. Longoria,* 177 F.3d 1179, 1183 n. 2 (10th Cir.) ("If a defendant . . . know-ingly exposes his conversations to accomplices, even in a room not accessible to the general public, his conversations are not subject to Fourth Amendment protection from disclosure by such accomplices."), *cert. denied,* 528 U.S. 892, 120 S.Ct. 217, 145 L.Ed.2d 182 (1999). The Court explained in *Hoffa* that "no interest legitimately protected by the Fourth Amendment is involved" where a defendant "rel[ies] upon his misplaced confidence that [a government informant] would not reveal his wrongdoing." 385 U.S. at 302, 87 S.Ct. 408. A defendant likewise lacks a Fourth Amendment privacy interest in the recording of statements made to a government agent and, therefore, such consensual audio recordings do not require a warrant. *United States v. White,* 401 U.S. 745, 749, 753, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); *Lopez v. United States,* 373 U.S. 427, 438–40, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963).

In *Lopez,* the Court determined that a wire recording of a conversation between a federal agent and an unsuspecting defendant did not violate the Fourth Amendment. 373 U.S. at 432, 437, 83 S.Ct. 1381. The Court reasoned that the agent "was in the office with petitioner's consent, and while there he did not violate the privacy of the office by seizing something surreptitiously without petitioner's knowledge." *Id.* at 438, 83 S.Ct. 1381. The Court explained that "[t]he only evidence obtained consisted of statements made by [the petitioner] to [the federal agent], statements which [the petitioner] knew full well could be used against him by [the federal agent] if he wished." *Id.* Because the federal agent could have testified about these conversations, the *Lopez* Court concluded that no Fourth Amendment violation occurred. *Id.* at 439, 83 S.Ct. 1381.

The Court arrived at the same view in *White.* At issue in *White* was whether the

Fourth Amendment barred testimony from government agents relating a conversation between the defendant and a government informant, which the agents overheard by monitoring the frequency of a radio transmitter secretly carried by the informant. 401 U.S. at 746–47, 91 S.Ct. 1122. *White* presented a slightly different factual scenario from *Lopez*—the informant not only recorded the conversations with the defendant but also instantaneously transmitted them electronically to agents equipped with audio receivers—but this factual distinction was of no constitutional significance. *Id.* at 750–51, 91 S.Ct. 1122. The Court explained that an "agent who conceals his police connections may write down for official use his conversations with a defendant and testify concerning them, without a warrant authorizing his encounters with the defendant and without otherwise violating the latter's Fourth Amendment rights." *Id.* at 751, 91 S.Ct. 1122. Transmission of the conversation, as it occurred, was deemed to be equally permissible. *Id.*

■ Once Davis invited Lorenzo into his residence, Davis forfeited his privacy interest in those activities that were exposed to Lorenzo.[2] We therefore hold that, as with the audio recordings in *Davis* and *Lopez*, the videotape evidence, which merely showed scenes viewable by Lorenzo, did not violate Davis's Fourth Amendment right to be free from unreasonable searches and seizures. Similar to the audio recording in *Lopez*, Lorenzo did not seize anything from Davis without his knowledge. Rather, Lorenzo was inside 35 Rose Avenue with Davis's consent and the hidden camera merely memorialized what Lorenzo was able to see as an invited guest. Also similar to *Lopez*, the video recording captured only statements and actions that Davis "knew full well could be used against him by [the informant] if he wished." *Lopez*, 373 U.S. at 438, 83 S.Ct. 1381. Because the hidden camera did not capture any areas in which Davis retained a privacy interest, no Fourth Amendment violation occurred.[3]

Davis confronts *Lopez* and *White* by attempting to carve a constitutional distinction between video and audio recordings. This analysis, however, conflicts with our decision in *United States v. Myers*, 692 F.2d 823 (2d Cir.1982), *cert. denied*, 461 U.S. 961, 103 S.Ct. 2437 (1983). One of the defendants in *Myers*, a former congressman prosecuted as part of the Abscam sting operation, argued that the hidden videotaping of his conversations with an undercover agent violated his Fourth Amendment rights. *Id.* at 859. With scant discussion, we held that the defendant failed to assert this claim at trial in a

---

**2.** This scenario is critically distinct from the situation in *Kyllo v. United States*, 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001), a decision on which Davis incorrectly relies. At issue in *Kyllo* was the use of a thermal imaging device that police directed at a person's home from a public street. *Id.* at 29, 121 S.Ct. 2038. The device was intended to detect infrared radiation *within* the home which, in turn, would indicate the presence of high intensity lamps used for marijuana growth. *Id.* at 29–30. *Kyllo*, therefore, did not involve a search by a visitor invited into the defendant's home and the defendant in *Kyllo* did not knowingly expose the contents of the home. Moreover, the device in *Kyllo*

detected more than what even an invited guest could have detected with ordinary sensory perception.

**3.** The video camera used in this case did not have enhanced magnification capabilities, nor is there any evidence that enhancement techniques were applied to the images that were transmitted and recorded. We do not decide today the constitutionality of video surveillance conducted by an invited visitor equipped with a hidden camera with the power to depict items and details unobservable by the human eye.

motion to suppress and, in any event, the claim was without merit. *Id.* Citing *White* and *Lopez,* we explained that the defendant's "conversations with undercover agents in whom he chose to confide were not privileged, and mechanical recordings of the sights and sounds to which the agents could have testified were proper evidence." *Id.* (citing *White,* 401 U.S. at 749–53, 91 S.Ct. 1122; *Lopez,* 373 U.S. at 437–40, 83 S.Ct. 1381).

Even were we to find that *Myers* does not govern this case, Davis's argument fails under *Lopez* and *White.* Davis urges that *Lopez* and *White* are inapposite because video recordings more accurately and reliably depict the actual events and scenes than an audio recording. This argument misses the mark. Lorenzo would have been able to testify to the activities he witnessed while a consensual visitor in Davis's residence. *See Hoffa,* 385 U.S. at 302, 87 S.Ct. 408. Davis therefore seems to suggest that, because a video recording would likely depict the activities with greater accuracy than the combination of an audio recording and Lorenzo's recollection, he suffered a Fourth Amendment violation. The Supreme Court has repudiated this very analysis. In rejecting the petitioner's Fourth Amendment claim in *Lopez,* the Court explained, "[s]tripped to its essentials, petitioner's argument amounts to saying that he has a constitutional right to rely on possible flaws in the agent's memory, or to challenge the agent's credibility without being beset by corroborating evidence that is not susceptible of impeachment." 373 U.S. at 439, 83 S.Ct. 1381; *see White,* 401 U.S. at 753, 91 S.Ct. 1122 ("[W]e are not prepared to hold that a defendant who has no constitutional right to exclude the informer's unaided testimony nevertheless has a Fourth Amendment privilege against a more accurate version of the events in question.").

Davis also suggests that video recordings should be treated differently from audio recordings because persons generally do not expect invited guests to be wearing miniature video cameras. The same could be said of audio recordings, however. A person generally does not suspect that a guest will be wired with audio recording devices, just as a person does not expect a guest to be outfitted with a hidden video camera.

CONCLUSION

We have considered all of the defendant-appellant's arguments and, for the reasons stated above, we AFFIRM the judgment of the District Court.