**United States Court of Appeals
Fifth Circuit**

**F I L E D**

**July 31, 2006**

**Charles R. Fulbruge III
Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 05-10384
_____

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

                    versus

JULIUS OSMOND BRATHWAITE,

                                        Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas, Dallas
USDC No. 3:03-CR-4-ALL-R
_____

Before JOLLY, BARKSDALE, and DENNIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Julius Brathwaite appeals the district court's denial of his motion to suppress evidence. Although he later entered a plea agreement, he preserved the right to appeal this issue -- the only issue before us. Brathwaite's primary arguments are that the videotaping of his living quarters by an invited confidential informant violated the Fourth Amendment, and that the admission of his statements of ownership of the guns violated his Miranda rights. We reject his Fourth Amendment claim, but hold that, because the government agents failed to give him the Miranda warnings before questioning him, the statements Brathwaite made about the guns found in his house should have been suppressed.

Under his plea agreement, he not only preserved the right to appeal this issue, but also the right to withdraw his plea of guilty upon a successful appeal. We therefore reverse the district court's denial of the motion to suppress as to those statements, affirm the rulings of the district court on all other issues relating to his motion to suppress, and remand to the district court for further proceedings not inconsistent with this opinion.[1]

I

In October 2002, a confidential informant ("CI") told Special Agent James LaMattina of the United States Secret Service that an individual she knew as "Jay," who later turned out to be Brathwaite, was manufacturing counterfeit driver's licenses and work identification cards for use with counterfeit business checks and credit cards. She also told Agent LaMattina that Brathwaite and others were using computers to manufacture these items at Brathwaite's mother's residence, where he lived.

Throughout November and December 2002, the CI met several times with Brathwaite and others, including Brathwaite's live-in girlfriend, Vanessa Hayes, to purchase counterfeit identification cards or checks, as part of an investigation by the Secret Service. She reported her activities to Agent LaMattina and other government agents. During some, but not all, of these meetings with

---

[1] We do not vacate his conviction and sentence. On remand, if he exercises the option he retained to withdraw his plea, then the district court will be obliged to vacate the conviction and sentence.

2

Brathwaite, the CI used a hidden video camera and microphone to record the meetings and transmit the information to government agents. The government did not obtain a warrant for the CI to use these devices. She hid these devices in her purse, which she kept with her whenever the devices were operating. The only time she put her purse down was while Brathwaite was taking her picture for her counterfeit identification card, and even then the purse was still in her presence. The meetings involving Brathwaite and the CI took place in Brathwaite's residence, which was across the street from a school. The meetings all concerned making counterfeit identification cards and checks. The CI not only bought some of these things, but also observed much of Brathwaite's computers and equipment, including a police scanner, at Brathwaite's residence. She further turned over some of the counterfeit objects to Agent LaMattina.

On December 17, 2002, Agent LaMattina submitted an affidavit and application for a search warrant to a magistrate. The application identified Brathwaite's residence, as well as two other locations, as places to search for "evidence of the commission of criminal offenses; contraband, the fruits of criminal offenses, things otherwise criminally possessed; or property designed or intended for use or which is or has been used as the means of committing criminal offenses." Much of the affidavit related to information obtained from the CI, who, as Agent LaMattina stated in the affidavit, had previously provided truthful and accurate

3

information.  The magistrate issued a search warrant on the same day, authorizing the search of Brathwaite's residence and one other location between 6:00 a.m. and 10:00 p.m.

Around 6:00 a.m. on December 19, 2002, while it was still dark, agents executed the search warrant at Brathwaite's residence. Agent LaMattina was not present, but Special Agent Ben Bass was. The agents claim that they wanted to execute the warrant as early as possible, before children started arriving at the school across the street.  As the agents approached the front door, Agent Bass noticed video cameras mounted on the exterior of the house.  The agents knocked on the front door and announced their presence. After waiting ten to fifteen seconds without a response, and without hearing any movement, the agents broke in through the front door.

The initial security sweep of the house produced nothing, but in a second sweep the agents found Hayes hiding under a bed.  After she dressed, she was handcuffed for awhile, and remained inside the house while the search was completed.  About twenty minutes after entry, agents found Brathwaite sitting in his running vehicle in the driveway alongside the house.  The agents removed him from the vehicle and handcuffed him.  Agent Bass spoke with Brathwaite while he was handcuffed.  At some point, he asked Brathwaite about his criminal history, and Brathwaite replied that he had been convicted of a felony and had served time in prison.  At some other point, another agent came out of the house and asked "where are the guns,

4

where are the rest of the guns in the house?" Agent Bass asked Brathwaite, "Are there any guns in the house?" Brathwaite answered in the negative. Agent Bass then stated "Mr. Brathwaite, you need to tell me, are there any guns in the house?" Brathwaite replied that he was keeping a pistol for a friend, and that it was on top of the washing machine. Furthermore, Brathwaite made some statement indicating that he owned a shotgun. Over two hours later, Brathwaite was formally arrested and was for the first time apprised of his <u>Miranda</u> rights. The agents did indeed find a .45 caliber pistol above the washing machine, although it is unclear when it was found or what agent found it. They also found a 20 gauge shotgun in the master bedroom, as well as ammunition and a gun magazine for the .45 caliber pistol, and .22 and .380 caliber ammunition. In addition to the guns, the search produced computer and printer equipment, photography equipment, IDs, checks, paperwork, and other such items.

II

On January 7, 2003, Brathwaite was indicted on one count of possession of firearms by a felon, with the count specifically mentioning a 20 gauge shotgun and a .45 caliber pistol. On September 4, 2003, Brathwaite was indicted on counts of identification document fraud, forgery, bank fraud, and interstate transportation of a stolen vehicle. The district court consolidated the two cases on December 22, 2003. Brathwaite filed a motion to suppress evidence which covered several items of

5

evidence, including the videos obtained from the CI's video surveillance, the 20 gauge shotgun, the .45 caliber pistol, and Brathwaite's statements regarding the guns and his status as a felon. The district court held a hearing on the motion to suppress, at which it did not make findings of fact or conclusions of law. On March 23, 2004, the district court denied the motion to suppress in a one-page order that did not include findings of fact or conclusions of law.

The parties filed a plea agreement on August 9, 2004, in which Brathwaite agreed to plead guilty to the single count of the indictment for possession of a firearm under 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and to count one of the other indictment, which charged identification document fraud under 18 U.S.C. §§ 1028(a)(1) and (2). In the plea agreement, Brathwaite reserved his right to appeal the district court's denial of his motion to suppress, and the plea agreement provided that if he prevailed on this appeal, he would be allowed to withdraw his guilty plea. The plea agreement specifically states that

> Brathwaite [] reserves the right to bring (a) a direct appeal of ... (iv) the District Court's denial of his motion to suppress the search warrant .... If Brathwaite prevails on appeal regarding the adverse determination on his motion to suppress evidence, he shall be allowed to withdraw his guilty plea in both cases.

On August 12, 2004, Brathwaite filed a motion for reconsideration of his motion to suppress, which the district court

6

denied in a one-page order that did not include findings of fact or conclusions of law. The district court adjudged Brathwaite guilty on September 2, 2004. On March 9, 2005, Brathwaite was sentenced to thirty-three months imprisonment in both cases, to run concurrently to each other, two years of supervised release in each case, to run concurrently, restitution, and a special assessment. Brathwaite timely appeals the denial of his motion to suppress.

## III

Brathwaite contends that the district court erred in denying his motion to suppress, arguing that 1) the CI's video surveillance was an impermissible warrantless search; 2) the search warrant was not supported by probable cause absent the evidence obtained from the CI's video surveillance; 3) the wait period between the knock and announce and the entry violated the Fourth Amendment;[2] 4) the agent's questioning of Brathwaite prior to apprising him of his Miranda rights violated the Fifth Amendment, and his statements should have been suppressed; and 5) the derivative evidence

---

[2] Brathwaite contends that all of the evidence against him obtained as a result of the search should be suppressed because the ten- to fifteen-second wait by the agents between the knock and announce and the entry during the execution of the search warrant was unreasonable. After reviewing the parties' briefs and the record, and viewing the evidence in the light most favorable to the government, the agents' knowledge of counter-surveillance and the reasonable assumption that computer files can be deleted quickly and quietly, with one key stroke, render the ten- to fifteen-second wait reasonable. Because we find the time to be reasonable, this case thus presents no reason for us to consider the recent Supreme Court opinion holding that the exclusionary rule does not apply to violations of the knock and announce rule. See Hudson v. Michigan, -- S. Ct. --, 2006 WL 1640577 (June 15, 2006).

discovered due to the alleged <u>Miranda</u> violations was the fruit of the poisonous tree and should have been suppressed. We hold that the district court did not err in denying Brathwaite's motion to suppress as to the video evidence, the knock and announce issues, the guns, and the statements regarding Brathwaite's criminal history. However, we hold that the district court erred in denying the motion to suppress as to Brathwaite's statements regarding the guns.

A

"In reviewing the denial of a motion to suppress evidence under the Fourth Amendment," the district court's factual findings are reviewed for clear error and its conclusions regarding the constitutionality of the search are reviewed <u>de</u> <u>novo</u>. <u>United States v. Runyan</u>, 275 F.3d 449, 456 (5th Cir. 2001). "We view the facts underlying the suppression determination in the light most favorable to the prevailing party, which in this case is the government." <u>Id.</u> The defendant must prove a Fourth Amendment violation by a preponderance of the evidence, then the burden shifts to the government to show why the exclusionary rule should not apply. <u>Id.</u> When the district court makes no findings of fact before denying a defendant's motion to suppress, the lack of fact finding "allows [the Court] to conduct a more searching review," with the analysis "guided by the testimony and other evidence adduced at the suppression hearing." <u>United States v. Paige</u>, 136 F.3d 1012, 1017 (5th Cir. 1998).

Brathwaite contends that video surveillance in the home is more intrusive on privacy expectations than is audio surveillance because it involves an invasion of the home using more than naked-eye surveillance, citing Kyllo v. United States, 533 U.S. 27 (2001) for this proposition. Thus he argues that video surveillance by or with the consent of a government informant constitutes a search within the gambit of the Fourth Amendment's protections, and a warrant is therefore necessary to legally conduct such video surveillance. We disagree.[3]

It is clear that audio surveillance by or with the consent of a government informant does not constitute a search. United States v. White, 401 U.S. 745 (1971). The Fourth Amendment does not protect "a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." Id. at 749 (internal quotations omitted). Furthermore,

> [i]f the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks.

---

[3] Because we find that the video surveillance was not impermissible, we obviously do not need to address Brathwaite's argument that without this "impermissible" evidence, the search warrant for his house was not supported by probable cause.

9

<u>Id.</u> at 751.  The Court stated that no evidence existed to show that a defendant's utterances would be substantially different whether he thought it possible his companion was cooperating with the police or whether he thought the companion was wired for sound. <u>Id.</u> at 752-53 ("[T]here is no persuasive evidence that the difference in this respect between the electronically equipped and the unequipped agent is substantial enough to require discrete constitutional recognition, particularly under the Fourth Amendment which is ruled by fluid concepts of 'reasonableness.'").  Furthermore, the Court held that the defendant does not have a Fourth Amendment right to prevent an electronic rendition simply because it is "a more accurate version of the events in question." <u>Id.</u> at 753.

In the case at hand, we are unable to find a constitutionally relevant difference between audio and video surveillance.[4]  Once

_____

[4] This view seems to be in line with the holdings of other circuits.  <u>See</u> <u>United States v. Lee</u>, 359 F.3d 194 (3d Cir. 2004), <u>cert. denied</u>, 543 U.S. 955 (2004) (holding no Fourth Amendment violation where defendant's hotel room was videotaped while consenting informant was in the room); <u>United States v. Davis</u>, 326 F.3d 361 (2d Cir. 2003), <u>cert. denied</u>, 540 U.S. 908 (2003) (holding that video surveillance in defendant's home by an invited visitor did not violate the Fourth Amendment); <u>United States v. Corona-Chavez</u>, 328 F.3d 974 (8th Cir. 2003) (holding no search where defendant was videotaped in informant's hotel room with consent of informant because defendant had no expectation of privacy in a stranger's hotel room or in a meeting with another person); <u>United States v. Yang</u>, 281 F.3d 534 (6th Cir. 2002) (citing <u>White</u>, holding no search when government, with informant's consent, videotaped defendant in informant's hotel room while informant was present, because defendant relinquished any justifiable expectation of privacy by voluntarily coming to the meeting with informant and voluntarily talking to him in informant's hotel room); <u>United</u>

10

Brathwaite invited the CI into his home, he "forfeited his privacy interest in those activities that were exposed to [the CI]." United States v. Davis, 326 F.3d 361, 366 (2d Cir. 2003), cert. denied, 540 U.S. 908 (2003); see also United States v. Lee, 359 F.3d 194, 201 (3d Cir. 2004), cert. denied, 543 U.S. 955 (2004) ("The principle underlying the governing Supreme Court cases is that if a defendant consents to the presence of a person who could testify about a meeting and is willing to reveal what occurs, the defendant relinquishes any legitimate expectation of privacy with respect to anything ... the testimony could cover."). The videotape evidence here only depicted what was viewable by the CI, to whose presence Brathwaite consented.[5]  See Davis, 326 F.3d at

---

States v. Nerber, 222 F.3d 597 (9th Cir. 2000) (holding videotaping defendants in hotel room while consenting informants were in the room was not a search because defendants were not overnight guests in the hotel room, but were only there to conduct a business transaction at the invitation of the occupants, and when informants were in the room, defendants bore the risk they were being surveilled); United States v. Laetividal-Gonzalez, 939 F.2d 1455 (11th Cir. 1991) (overruled in part on other grounds) (holding videotaping defendant while in informant's office that informant was renting from defendant was not a search because the defendant "assumed the risk that the person to whom he spoke might disclose anything he had seen or heard").

[5] Brathwaite makes no allegation that the CI roamed beyond the area of consent.  We do not decide the constitutionality of video surveillance by an invited visitor who ventures beyond the bounds of the area to which he is consensually granted access.  Brathwaite also does not contend that the video equipment at issue had or used any enhancement capabilities which might capture things unobservable to the human eye.  We likewise do not decide the constitutionality of video surveillance by an invited visitor using video equipment with the ability to capture things beyond what the human eye could detect.

11

366. "[J]ust as [Brathwaite] gave up any expectation of privacy in the things that he allowed [the CI] to hear, [Brathwaite] also gave up any expectation of privacy in the things that he allowed [the CI] to see." Lee, 359 F.3d at 201-02. "Although video surveillance may involve a greater intrusion on privacy than audio surveillance, the difference is not nearly as great as the difference between testimony about a conversation and audio recordings of conversations." Id. at 202. Because Brathwaite did not retain a privacy interest in the areas captured by the video surveillance conducted by an invited visitor, we hold that no Fourth Amendment violation occurred.[6] See Davis, 326 F.3d at 366.

B

Brathwaite next argues that his Fifth Amendment rights were violated by the agents' questioning him prior to giving him Miranda warnings; thus his statements regarding guns and his prior conviction, as well as the guns themselves, should be suppressed.[7]

_____

[6] We agree with our sister circuit that Kyllo, the case relied upon by Brathwaite, is inapposite to this situation. Kyllo "did not involve a search by a visitor invited into the defendant's home and the defendant in Kyllo did not knowingly expose the contents of the home. Moreover, the device in Kyllo detected more than what even an invited guest could have detected with ordinary sensory perception." Davis, 326 F.3d at 366 n.2.

[7] With respect to the physical guns themselves, the district court did not err in refusing to suppress them. See United States v. Patane, 542 U.S. 630 (2004) (plurality opinion). "Introduction of the nontestimonial fruit of a voluntary statement ... does not implicate the Self-Incrimination Clause. The admission of such fruit presents no risk that a defendant's coerced statements (however defined) will be used against him at a criminal trial." Id. at 643 (plurality opinion). Because "'[t]he exclusion of

12

We review a district court's factual findings surrounding a motion to suppress statements made in violation of Miranda under the clear error standard, and review conclusions of law de novo. United States v. Mendez, 27 F.3d 126, 129 (5th Cir. 1994). "[T]he evidence is viewed in the light most favorable to the prevailing party." Id.

Miranda v. Arizona extended the Fifth Amendment privilege against self-incrimination, requiring suppression of statements stemming from custodial interrogation in which the defendant is not apprised of his rights. 384 U.S. 436, 444 (1966); see also Dickerson v. United States, 530 U.S. 428, 443-44 (2000) (Miranda's

---

unwarned statements ... is a complete and sufficient remedy' for any perceived *Miranda* violation[,]" any such fruit need not be suppressed. Id. (plurality opinion) (first alteration and omission in original) (quoting Chavez v. Martinez, 538 U.S. 760, 790 (2003)); see also Patane, 542 U.S. at 645 (Kennedy, J., concurring) ("Admission of nontestimonial physical fruits ... does not run the risk of admitting into trial an accused's coerced incriminating statements against himself."). Furthermore, "the concerns underlying the [*Miranda*] rule must be accommodated to other objectives of the criminal justice system." Id. at 644 (Kennedy, J., concurring). Those objectives do not require suppression in this case. Id. at 645 (Kennedy, J., concurring) ("In light of the important probative value of reliable physical evidence, it is doubtful that exclusion can be justified by a deterrence rationale sensitive to both law enforcement interests and a suspect's rights during an in-custody interrogation.").

Brathwaite also made an unwarned response regarding his status as a felon. The district court did not err in refusing to suppress this evidence; the fact of Brathwaite's felony would have been inevitably discovered. Indeed, the government agents were conducting a backgound check on Brathwaite while he was being questioned, and the records showed that Brathwaite had a felony conviction. Therefore, the inevitable discovery exception applies to this issue. See United States v. Lamas, 930 F.2d 1099, 1102 (5th Cir. 1991).

13

"core ruling" was "that unwarned statements may not be used as evidence in the prosecution's case in chief."). The government does not contest that Brathwaite was questioned in violation of Miranda, but instead argues that certain exceptions to Miranda and to the exclusionary rule operate to render the denial of the motion to suppress proper.

Brathwaite argues that his statements regarding the guns should have been suppressed, more specifically, statements and inferences from the statements that constitute evidence of his knowledge or of his ownership of the guns. As the government argues, Brathwaite's statements about the guns were material to show that Brathwaite's possession of the guns was knowing. The government first argues that the public safety exception to Miranda applies, which we find unpersuasive as noted below.[8]

_____

[8] The public safety exception to Miranda allows the admission as evidence of statements given by a defendant before being given Miranda warnings when "a situation posing a threat to the public safety" exists. New York v. Quarles, 467 U.S. 649, 655-60 (1984). This exception is a "narrow exception" which in each case is "circumscribed by the exigency which justifies it." Id. at 658. In Quarles, the police "had every reason to believe the suspect had just removed [a gun] from his empty holster and discarded it in [a] supermarket," posing dangers to the public safety such as an accomplice making use of it or a civilian finding it. Id. at 657. "When the danger inherent in a confrontation has passed, so has the basis for the [public safety] exception." Fleming v. Collins, 954 F.2d 1109, 1114 (5th Cir. 1992) (en banc).

It is uncontested that at the time of questioning, the agents had performed two sweeps of the house and had both occupants of the house in handcuffs. The agents were in the process of executing the search warrant. Furthermore, the government's contention that a public safety concern existed in that a member of the public, including school children, might find a gun outside the house is

14

The only other argument the government presents in support of the district court's denial of the motion to suppress is: The admission of the unwarned statements was harmless. "Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Fed. R. Crim. P. 52(a). The government argues that the failure to suppress Brathwaite's statements is harmless beyond a reasonable doubt because untainted evidence overwhelmingly establishes that Brathwaite's possession of the guns was knowing. See United States v. Virgen-Moreno, 265 F.3d 276, 294 (5th Cir. 2001).

Even if this is true, the argument is irrelevant to this appeal. The appeal here is from the ruling denying his motion to suppress; it is not an appeal from his plea of guilty or from his plea agreement. The ruling was entered before he decided to plead guilty and before the plea agreement was ever confected. With

undermined by the questioning itself -- Agent Bass testified that he asked Brathwaite repeatedly "Are there any guns *in the house*?", and never testified as to asking him about any guns located anywhere else. Because sweeps had been done, the occupants were handcuffed, and the immediacy of the situation had passed, the government's proposition that the possibility of guns located within Brathwaite's private residence provided a threat to the public is likewise unavailing. The public did not have access to Brathwaite's private residence, which was under the full control of the agents at the time of questioning. See United States v. Raborn, 872 F.2d 589, 595 (5th Cir. 1989) (dictum) ("Unlike ... Quarles, ... when the gun was hidden in a place to which the public had access, [the] truck, where the ... officers believed the gun to be, had already been seized and only the ... officers had access to [it]. It is difficult therefore, to find that the public-safety exception applies."). Thus, we do not find such an exigency necessary to apply the narrow confines of the public safety exception to the case at hand.

15

apologies for iteration, it was only <u>after</u> his motion to suppress was denied and <u>after</u> his chances of conviction were enhanced that he decided to enter the plea agreement. Thus, the appeal before us is from a ruling that is independent of his plea of guilty and consequently, the weight of the evidence supporting Brathwaite's guilt is not at issue here.

Thus, when we consider the government's argument that the conceded error of approving the unwarned statements for admissibility is harmless, we must focus precisely on what error of the district court the government asks us to hold harmless. The error cannot relate to the substance of the statements. The ruling appealed from does not address the substance of the statements. The error cannot be that the admissibility of the unwarned statements is harmless. There was never a trial. The error of the district court on appeal is not the conviction, because the conviction resulted from a plea agreement between the defendant and the government, not from the action of the court. Moreover, the <u>error complained of</u> -- approving for admissibility the unwarned statements -- is independent of, and dissociated from, guilt. The error to which harm attached is the district court's specific and discrete ruling denying the motion to suppress; Brathwaite's harm from that ruling is that he was required to accept the fact that damning but inadmissible evidence would be introduced against him if he went to trial. Brathwaite's substantial right that is affected by the erroneous ruling is his right to go to trial

16

without tainted evidence being admitted against him, or at least the right to decide whether to go to trial free of the tainted evidence. The government offers no evidence that relates to the harmlessness of <u>this</u> error, but only argues that the weight of the other evidence against Brathwaite renders harmless the <u>substance</u> of the evidence of his unwarned statement. This argument is tantamount to contending that the district court could have disposed of the motion to suppress by holding that even though the statement was taken in violation of <u>Miranda</u>, it will be admitted nevertheless because the other evidence of guilt renders such tainted evidence harmless, which is obviously senseless reasoning for denying a motion to suppress. The only winning argument for the government that denying the motion to suppress is harmless is that, irrespective of the district court's ruling, Brathwaite would have entered the same plea agreement. The government, of course, makes no such contention in the absence of any evidence to support such an argument. Thus, because the government concedes (correctly so) that, absent the public safety exception, the ruling is error (but harmless), and because we find the error is not harmless, we are required to reverse.

For the reasons stated herein, we reverse the district court's denial of the motion to suppress as to Brathwaite's statements regarding the guns, and only as to Brathwaite's statements regarding the guns. In reversing the district court on the motion to suppress, we give Brathwaite the option of withdrawing his

17

guilty plea, as per his plea agreement.  The district court's rulings on the motion to suppress are AFFIRMED, except as relates to Brathwaite's statements regarding the guns, which is REVERSED.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.