COMMONWEALTH of Pennsylvania,
Appellant

v.

Gerald M. DUNNAVANT, Appellee.

Superior Court of Pennsylvania.

Argued Jan. 10, 2013.
Filed Feb. 27, 2013.

Cynthia A. Gilkey, Assistant District Attorney, Mercer, for Commonwealth, appellant.

Charles F. Gilchrest, Sharon, for appellee.

BEFORE: DONOHUE, SHOGAN and WECHT, JJ.

OPINION BY SHOGAN, J.:

The Commonwealth of Pennsylvania ("the Commonwealth") appeals from the order entered on June 8, 2012 granting the suppression motion filed by Gerald M. Dunnavant ("the defendant"). On appeal,

the Commonwealth argues that the suppression court erred by prohibiting for use at trial evidence obtained from a silent video camera worn by a confidential informant inside the defendant's residence. After careful review of this issue of first impression, we affirm.

The suppression court made the following findings of fact:

1. Douglas Loadman is a Narcotics Agent employed by the Pennsylvania Office of Attorney General, Bureau of Narcotics Investigations and Drug Control with approximately 11 years of experience as a narcotics agent.

2. In September 2010, Agent Loadman was participating in a narcotics investigation with the assistance of the Southwest Mercer County Regional Police Department (the "SWMCRPD" and collectively the "Drug Task Force"). The investigation was focused upon many individuals, including Lindsey Lowe ("Lowe"). As an investigative tool, the Task Force used the services of a paid confidential informant ("CI").

3. At approximately 4:00 pm on September 29, 2010, the CI telephoned Lowe for the purpose of purchasing cocaine. Lowe instructed the CI [to] go to the corner of Bond and Beechwood Avenues in the City of Farrell, Mercer County, Pennsylvania where the CI would be met by Lowe's "man."

4. Prior to the meeting with Lowe's man, members of the Drug Task Force met with the CI in West Middlesex and placed a covert digital camera upon him or her. The camera recorded black and white video images, but no sound. It was positioned on the front of the CI's shirt and could only record images that appeared directly in front of the CI. If the CI turned his or her head, the camera would continue to only record images appearing in front of the CI.

5. Prior to the meeting with Lowe's man, members of the Drug Task Force also searched the CI and gave him the "buy cash," consisting of bills whose [sic] serial numbers had been recorded.

6. The camera was then turned on and a member of the Drug Task Force then drove the CI to the vicinity of the "meet."

7. In addition to recording the trip to the vicinity of the "meet," the camera also recorded:

 a. The CI exiting the Drug Task Force member's vehicle;

 b. The CI walking to and waiting at the corner of Bond and Beechwood Avenues;

 c. The CI getting into and riding in a car operated by the Defendant;

 d. The CI getting out of the car and walking with the Defendant to a residence located at 335 Fruit Avenue in the City of Farrell;

 e. The CI and the Defendant entering the residence and sitting in the living room, which had the usual and customary furnishings typical of any residence[;]

 f. The Defendant leaving the living room, going into another room, returning to the living room, and handing an envelope to the CI;

 g. The CI leaving the residence;

 h. The CI walking along a street, and being picked up by a member of the Drug Task Force;

 i. Riding in the Drug Task Force member's vehicle back to West Middlesex where the camera was removed from the CI and the images transferred to a digital disc.

8. Upon the CI's return to West Middlesex, Agent Loadman retrieved the covert camera and transferred the digital images to a digital video disc ("DVD").

9. During the entire episode, the CI was surveilled by members of the Drug Task Force although they could not observe the CI inside the residence at 335 Fruit Avenue.

10. Members of the surveillance team were able to identify the car that picked up the CI [as] a green Chrysler sedan and that the address at 335 Fruit Avenue was the Defendant's residence.

11. The Drug Task Force continues to use the CI in its ongoing investigations, and if his or her identity were to be disclosed, the CI's identity would become common knowledge in the illicit drug community, thereby destroying the CI's effectiveness in future investigations.

12. Agent Loadman is concerned about the safety of the CI because it is not unusual for CIs to be threatened with physical harm if they testify, and the CI has already experienced intimidation-type encounters.

13. Corporal Charles Rubano, a police officer with the SWMCRPD and having 17 years [of] experience, was the officer assigned as liaison to the Attorney General's Bureau of Narcotics Investigations and Drug Control since 2004, and is a member of the Drug Task Force.

14. Cpl. Rubano knows the Defendant, that the Defendant drives a green Chrysler sedan, and that the Defendant resides at 335 Fruit Avenue. The building in which the Defendant resides is a single story duplex or triplex owned by the Mercer County Housing Authority, a public housing agency.

15. Cpl. Rubano and other members of the SWMCRPD have received information during the summer of 2012 that there were frequent "comings and goings" at Defendant's residence, evidencing possible illicit drug activity. Cpl. Rubano and other members of the SWMCRPD have also received "reports," many of which were anonymous, and heard "rumors" that the Defendant was involved in illicit drug activity at his residence.

Although no testimony was presented, the envelope the Defendant delivered to the CI contained two baggies containing 25.2 grams of cocaine.

Suppression Court Opinion, 6/8/12, at 1–4.

Following a hearing on June 6, 2012, the suppression court granted the defendant's motion: "[T]he Commonwealth is precluded from presenting any portion of the silent DVD video depicting the interior of the Defendant's residence" because it was "not crucial or even necessary to the Commonwealth establishing its case against the Defendant, whereas the testimony of the CI is crucial." Suppression Court Opinion, 6/8/12, at 8. The suppression court further ruled that, if the Commonwealth intended to call the CI to testify at trial, it had to disclose the CI's name. *Id.* The Commonwealth appealed. Pursuant to Pennsylvania Rule of Appellate Procedure 311(d), the Commonwealth certified that the suppression order will substantially handicap its prosecution of the defendant's case. Notice of Appeal, 7/3/12. Additionally, the Commonwealth and the suppression court have complied with the requirements of Pennsylvania Rule of Appellate Procedure 1925.

As previously noted, the Commonwealth raises a single question on appeal:

Whether the Omnibus Court erred by suppressing at trial evidence obtained by the use of a silent video camera worn

by an informant inside of [the defendant's] residence.

Commonwealth's Brief at 4.[1]

When the Commonwealth appeals from a suppression order:

we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Miller,* 56 A.3d 1276, 1276 (Pa.Super.2012) (quoting *Commonwealth v. Chernosky,* 874 A.2d 123, 124–125 (Pa.Super.2005) (citations omitted)).

The Commonwealth does not challenge the factual findings of the suppression court; rather, it claims the court's legal conclusions are erroneous. In support of its argument, the Commonwealth attempts to distinguish our decision in *Commonwealth v. Kean,* 382 Pa.Super. 587, 556 A.2d 374 (1989), *appeal denied,* 525 Pa. 596, 575 A.2d 563 (1990). In *Kean,* two juveniles secretly videotaped their sexual encounters with two adults by hiding a video camera in the adults' bedroom. The *Kean* panel held that a defendant has "a legitimate expectation of privacy not only in their home, but also in the reflection of their home that the videotape captured and preserved." *Id.* at 384.

The Commonwealth's first point of distinction is that the juveniles in *Kean* sneaked into the adults' bedroom and secreted the camera, whereas the defendant at hand invited the camera-bearing CI into his living room. Commonwealth's Brief at 10. Next, the Commonwealth submits that the video recording in *Kean* captured images in a bedroom, whereas the video camera at issue captured images in the defendant's less private living room. *Id.* at 11. The Commonwealth continues: The camera used in *Kean* remained in place even after the juveniles left, but the camera at issue left with the CI. *Id.* Furthermore, unlike the juveniles in *Kean,* the Commonwealth argues, the police in this case did not intend to capture the inside of the defendant's home as the purchase was to take place on a street corner. *Id.* at 11–12. Finally, the Commonwealth posits:

Clearly, the Confidential Informant could permissibly testify to his observations while inside [the defendant's] living room. The Commonwealth submits that the silent recording of the same living room does not constitute any greater invasion of [the defendant's] privacy.

*Id.* at 13. Relying on these distinctions, the Commonwealth invites us to reassess the reasoning in *Kean* "given the age of the Kean case, the advances in technology and the absence of guidance from the Pennsylvania Supreme Court." Commonwealth's Brief at 10.[2]

---

**1.** The Commonwealth does not challenge that part of the order requiring it to disclose the CI's identity if it decided to call the CI as a witness at trial.

**2.** Additionally, the Commonwealth relies on several federal decisions holding that, where the defendant voluntarily reveals his home to a government agent, including a confidential informant, the electronic surveillance of a defendant's residence is not an impermissible warrantless search and does not violate the defendant's expectation of privacy. Commonwealth's Brief at 12 (citing *U.S. v. Brathwaite,* 458 F.3d 376 (5th Cir.2006) (video surveillance); *U.S. v. Larios,* 593 F.3d 82 (1st Cir.2009) (audio surveillance); *U.S. v. Davis,* 326 F.3d 361 (2nd Cir.2003) (video surveillance); *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966) (audio surveillance)).

We decline the Commonwealth's invitation for several reasons. First, although presented with the opportunity to review *Kean*, the Pennsylvania Supreme Court denied the appeal. *Commonwealth v. Kean*, 525 Pa. 596, 575 A.2d 563 (1990). Thus, *Kean* remains controlling law on the subject of a defendant's "legitimate expectation of privacy not only in their home, but also in the reflection of their home that [a] videotape capture[s] and preserve[s]." *Kean*, 556 A.2d at 384.

Furthermore, we agree with the suppression court's rationale for rejecting the Commonwealth's arguments:

In the instant case, the Commonwealth first asserts that the Defendant waived his right [to] privacy in his residence by inviting the CI into his residence. This position is without merit and was discussed extensively in *Kean*. Admittedly, any invitee has the ability to describe events occurring within the privacy of another's residence, a risk borne by the dweller of any residence. However, the dweller of a residence does not expect that an invitee would videotape events occurring inside his or her residence without his or her consent.

However, the facts presented in the instant case are even more offensive to the Fourth Amendment than the *Kean* case. In *Kean*, two of the Defendants' victims decided to videotape the Defendants' sexual activities for personal reasons. In the instant case, the ***Government*** videotaped events occurring inside the Defendant's residence intending to use the silent DVD video as evidence if it bore fruits of incriminating activity.

The Commonwealth attempts to circumvent this issue by insisting that it had no advance notice that anything would occur inside the Defendant's residence, and therefore the silent DVD video of the interior of the Defendant's residence was merely inadvertent and any perceived violation of the Defendant's Fourteenth Amendment rights was unintentional and therefore harmless error. It is difficult for this Court to conceive that a violation of a person's Constitutional rights is "harmless."

\* \* \*

In the instant case, the "best evidence" would be the testimony of the CI, and the silent DVD video would merely be corroborative of a portion of the CI's testimony. Due to its position on the CI's body, the silent DVD video only captures glimpses of the Defendant entering his residence and while inside his residence. It also only captures glimpses of the interior of several vehicles and the CI entering the premise at 335 Fruit Avenue. Having observed the silent DVD video, it is obvious to this Court that the silent DVD video is of little probative value without the testimony of the CI.

Suppression Court Opinion, 6/8/12, at 6, 7 (emphasis supplied).

 As in *Kean*, the question before us is whether the defendant has a privacy interest in not being videotaped secretly in his own home. Where the government conducts the video recording, the question becomes one of constitutional proportion.

---

In response, we reiterate that federal opinions are not binding on this Court. *See Commonwealth v. Giffin*, 407 Pa.Super. 15, 595 A.2d 101, 106–107 (1991) ("In the absence of a ruling on a particular question by the United States Supreme Court, the decision of a federal intermediate appellate panel, much less that of a federal district court, is not binding on Pennsylvania courts. Pennsylvania courts are not bound by the decisions of inferior federal courts where the case specifically concerns Pennsylvania law. While decisions of the lower federal courts have a persuasive authority, they are not binding on Pennsylvania courts even where they concern federal questions." (citations omitted)).

Both the United States Constitution and the Pennsylvania Constitution help shield citizens from improper behavior by the government. The main thrust of protection under the U.S. Constitution is to prevent police misconduct. *Commonwealth v. Spencer*, 888 A.2d 827, 831 n. 2 (Pa.Super.2005), *appeal denied*, 588 Pa. 781, 906 A.2d 542 (2006). The Pennsylvania Constitution affords that protection *and* a heightened protection of an individual's privacy. *Id.* Indeed, "[t]his Court has not hesitated to interpret the Pennsylvania Constitution as affording greater protection to defendants than the federal Constitution." *Commonwealth v. Tarbert*, 517 Pa. 277, 535 A.2d 1035 (1987) (citations omitted).

Nevertheless, both the fourth amendment and article 1, section 8 were designed to serve the same vital function—to prevent government officials from unjustifiably invading the privacy of individuals. Thus, both the state and federal constitutional limitations on "unreasonable searches and seizures" apply exclusively to the conduct of persons who are acting as instruments or agents of the state.

*Kean*, 556 A.2d at 378. Hence, "[a] search conducted without a warrant issued upon probable cause is per se unreasonable under the Fourth and Fourteenth Amendments, subject only to a few specifically established and well-delineated exceptions." *Commonwealth v. Blair*, 394 Pa.Super. 207, 575 A.2d 593, 596–597 (1990), appeal denied, 526 Pa. 646, 585 A.2d 466 (1991).[3]

■ The video recording at issue was government behavior and, through the lens of a hidden, digital video camera, a warrantless search of the defendant's residence. Thus, it is *per se* unreasonable. *Blair*, 575 A.2d at 596–597. The Commonwealth does not—and cannot—defend the video recording at issue with any of the specifically established and well-delineated exceptions to the warrant requirement. Even if the Commonwealth's video recording inside the defendant's living room was "inadvertent," we hold that it was an unconstitutional invasion of the defendant's expectation of privacy in his home. As such, the Commonwealth could not use the video recording against the defendant.

Based on the foregoing, we conclude that the suppression court did not err in granting the defendant's motion to suppress the Commonwealth's video recording. Accordingly, we affirm the order of suppression.

Order affirmed. Jurisdiction relinquished.

---

3. "A search 'is an examination of a man's house, buildings or of his person, with a view to the discovery of contraband or some evidence of guilt to be used by the prosecution for a criminal action.'" *Commonwealth v. Blasioli*, 454 Pa.Super. 207, 685 A.2d 151, 155 (1996) (quoting *Commonwealth v. Anderson*, 208 Pa.Super. 323, 222 A.2d 495, 498 (1966)).

. Exceptions to the warrant requirement include the consent exception, the plain view exception, the inventory search exception, the exigent circumstances exception, the automobile exception, the "hot pursuit" exception, the stop and frisk exception, and the search incident to arrest exception.