J-A23028-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KAREN ANN HOYLE | : | No. 99 WDA 2018 |

Appeal from the Order December 19, 2017
In the Court of Common Pleas of Greene County Criminal Division at
No(s):  CP-30-CR-0000175-2017

BEFORE:  BOWES, J., SHOGAN, J., and STABILE, J.

MEMORANDUM BY SHOGAN, J.:                **FILED FEBRUARY 6, 2019**

The Commonwealth appeals from the order granting the pretrial motion to suppress evidence filed by Appellee, Karen Ann Hoyle.  We affirm.

On the night of September 1, 2016, Pennsylvania State Trooper John Pash pulled over Appellee when he observed that one-half of her tail light and one-half of her brake light were not functioning.  Upon approaching Appellee's vehicle, the trooper noticed a strong odor of alcohol coming from Appellee's breath and that her eyes were bloodshot.  The officer conducted a portable breath test and, based on the results, (1) the trooper arrested Appellee, (2) transported her to the hospital, and (3) asked her to submit to a blood test. The trooper alleged that, at the hospital, he read Appellee her implied consent

warnings from Pennsylvania Department of Transportation form DL-26.[1] However, neither Trooper Pash nor Appellee signed a DL-26 form, and Appellee has testified that she did not receive such warnings. The results of the blood test indicated that Appellee had a blood alcohol content ("BAC") of 0.184%. Appellee was charged with two counts of driving under the influence ("DUI") and one count of reckless driving.[2]

On September 25, 2017, Appellee filed a motion to suppress the results of the blood test. which challenged the validity of the blood draw. The trial court held a suppression hearing on December 4, 2017. On December 19, 2017, the trial court entered an order determining that the seizure of Appellee's blood was not voluntary or consensual and ordered that the results of the blood test be suppressed pursuant to **Birchfield v. North Dakota**, 136 S.Ct. 2160 (2016).[3] The Commonwealth filed this timely appeal. Pursuant to Pa.R.A.P. 311(d), the Commonwealth certified in its notice of appeal that the order appealed from substantially handicapped or terminated the prosecution

---

[1] Form DL-26 is issued by Pennsylvania's Department of Transportation describing Pennsylvania's implied consent law, 75 Pa.C.S. § 1547.

[2] 75 Pa.C.S. §§ 3802(c), 3802(a)(1), and 3712(a).

[3] **Birchfield** held that the Fourth Amendment to the United States Constitution does not permit warrantless blood tests incident to arrests for drunk driving and that a state may not criminalize a motorist's refusal to comply with a demand to submit to blood testing. **Birchfield**, 136 S. Ct. at 2185-2186.

of Appellee. Both the Commonwealth and the trial court have complied with Pa.R.A.P. 1925.

The Commonwealth presents the following issue for our review:

DID THE COURT ERR IN DELCARING THE APPELLEE'S CONSENT TO A BLOOD DRAW INVOLUNTARY AND SUPPRESSING THE EVIDENCE OBTAINED AS A RESULT?

Commonwealth's Brief at 9.

In its sole issue, the Commonwealth argues that the trial court erred in granting Appellee's motion to suppress. Commonwealth's Brief at 14-18. The Commonwealth contends that the decision in **Birchfield** did not hold that an individual has a Constitutional right to refuse a warrantless blood draw. Rather, the Commonwealth posits that **Birchfield** forbids the imposition of criminal penalties for non-compliance with implied consent laws. The Commonwealth claims that the trial court, in determining whether Appellee's consent was voluntary, erred in considering whether Appellee was expressly informed of her right to refuse the blood draw. The Commonwealth asserts that, because Appellee was never warned of enhanced criminal penalties for refusing a blood draw, there was no reason to declare her consent to be involuntary.

The standard of review an appellate court applies when considering an order granting a suppression motion is well established and has been summarized as follows:

> We begin by noting that where a motion to suppress has been filed, the burden is on the Commonwealth to

establish by a preponderance of the evidence that the challenged evidence is admissible. In reviewing the ruling of a suppression court, our task is to determine whether the factual findings are supported by the record. If so, we are bound by those findings. Where, as here, it is the Commonwealth who is appealing the decision of the suppression court, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record . . . remains uncontradicted.

Moreover, if the evidence when so viewed supports the factual findings of the suppression court, this Court will reverse only if there is an error in the legal conclusions drawn from those findings.

*Commonwealth v. Lindblom*, 854 A.2d 604, 605 (Pa. Super. 2004) (citations omitted). In addition, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013).

With respect to factual findings, we are mindful that it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented. However, where the factual determinations made by the suppression court are not supported by the evidence, we may reject those findings. Only factual findings which are supported by the record are binding upon this court.

*Commonwealth v. Benton*, 655 A.2d 1030, 1032 (Pa. Super. 1995) (citations omitted). Moreover, questions of the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Commonwealth v. Freidl*, 834 A.2d 638, 641 (Pa. Super. 2003).

Further, Pennsylvania Rule of Criminal Procedure 581, which addresses the suppression of evidence provides, in relevant part, as follows:

> (H) The Commonwealth shall have the burden . . . of establishing that the challenged evidence was not obtained in violation of the defendant's rights.

Pa.R.Crim.P. 581(H).

Both the United States and Pennsylvania Constitutions prohibit "unreasonable searches and seizures." U.S. Const. amend. IV; Pa. Const. art. 1, § 8. As we have explained:

> "[a] search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies." *Commonwealth v. Strickler*, 563 Pa. 47, 757 A.2d 884, 888 (2000). "Exceptions to the warrant requirement include the consent exception, the plain view exception, the inventory search exception, the exigent circumstances exception, the automobile exception . . ., the stop and frisk exception, and the search incident to arrest exception." *Commonwealth v. Dunnavant*, 63 A.3d 1252, 1257 n.3 (Pa. Super. 2013).
>
> The "administration of a blood test . . . performed by an agent of, or at the direction of the government" constitutes a search under both the United States and Pennsylvania Constitutions. *Commonwealth v. Kohl*, 532 Pa. 152, 615 A.2d 308, 315 (1992); *Schmerber v. California*, 384 U.S. 757, 770, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Since the blood test in the case at bar was performed without a warrant, the search is presumptively unreasonable "and therefore constitutionally impermissible, unless an established exception applies." *Strickler*, 757 A.2d at 888.

*Commonwealth v. Evans*, 153 A.3d 323, 327-328 (Pa. Super. 2016). "One such exception is consent, voluntarily given." *Strickler*, 757 A.2d 888 (citation omitted). Under the Fourth Amendment, where an encounter with

- 5 -

law enforcement is lawful, voluntariness of consent to a search becomes the exclusive focus. *Id*.

Our Supreme Court has applied the following standard to determine whether an individual has validly consented to a chemical test:

> In determining the validity of a given consent, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances. The standard for measuring the scope of a person's consent is based on an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent. Such evaluation includes an objective examination of the maturity, sophistication and mental or emotional state of the defendant. Gauging the scope of a defendant's consent is an inherent and necessary part of the process of determining, on the totality of the circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation.

*Commonwealth v. Smith*, 77 A.3d 562, 573 (Pa. 2013) (internal citations and quotation marks omitted).

The trial court offered the following analysis in reviewing the testimony presented at the suppression hearing and determining that the results of the blood draw must be suppressed:

> The [c]ourt notes that there was no refusal in the instant case and that blood was drawn which revealed a blood alcohol rating of 0.184 % this, however, was drawn without a search warrant. In light of *Birchfield*, a motorist's implied consent to a blood draw, is no longer an exception to the Fourth Amendment [w]arrant requirement. Given the fact that no search warrant was issued for seizure of the blood, the [c]ourt must look to any exception, to the Fourth Amendment-particularly consent.

- 6 -

The [c]ourt will note that O'Connell Warnings[4] were not signed by [Appellee] or the arresting officer. The [c]ourt does not find this necessarily fatal to the Commonwealth's case, as the O'Connell Warnings are generally related to the intent to inform the individual with regard to the right to remain silent and the right to counsel which do not attach under what remains of implied consent after *Birchfield*.

O'Connell Warnings are not designed to replace informed consent. The [c]ourt must look to the totality of the circumstances to determine whether the seizure of blood was consensual and therefore, an exception to the [w]arrant [r]equirement. The [c]ourt will note that [Appellee] was subject to field sobriety testing, was in police custody from the time that her vehicle was stopped, presumably was transported in the back of a patrol vehicle, handcuffed and taken directly to the Waynesburg Hospital, where blood was drawn.

The [c]ourt notes [Appellee's] level of intoxication and also notes that the Commonwealth did not indicate (therefore failed to meet their burden of proof) that she had a right to refuse the draw of blood. The [c]ourt further notes that this failure to advise is not definitive, but is a factor to consider in the totality of the circumstances in determining consent. The right to refuse consent

_____

[4] Our Supreme Court has stated:

The phrase, "*O'Connell* warning", is a shorthand expression for the duty imposed upon a police officer to inform a motorist, who has been asked to submit to chemical testing, that the *Miranda* rights are inapplicable to a request for chemical testing under the Implied Consent Law. *Commonwealth, Department of Transportation v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989). The *O'Connell* warning must specifically inform a motorist (1) that his driving privileges will be suspended for one year if he refuses chemical testing; and (2) that his *Miranda* rights do not apply to chemical testing. *Commonwealth, Department of Transportation v. Ingram*, 538 Pa. 236, 648 A.2d 285 (1994).

*Commonwealth, Dept. of Transp., Bureau of Driver Licensing v. Boucher*, 691 A.2d 450, 452 (Pa. 1997) (referencing *Miranda v. Arizona*, 384 U.S. 436 (1966)).

is more fully addressed in **Com. v. Strickler**, 563 Pa. 47, 757 A.2d 884, 901 (Pa. 2000).

* * *

The [c]ourt further notes that [Appellee] indicated that she did not feel that the drawing of blood was a product of her free will. The Commonwealth's reliance on the O'Connell Warnings to establish consent is misplaced. Under the circumstances as presented on the evening of September 1, 2016, a reasonable person similarly situated would not have believed that they had the right to refuse a blood draw.

Therefore, given the totality of the circumstances the [c]ourt finds that the seizure of blood was not voluntary or consensual and, therefore, not an exception to the warrant requirement.

Trial Court Order, 12/19/17, at 2-6.

In evaluating whether Appellee voluntarily consented to the blood draw in view of the totality of the circumstances, we conclude that the trial court properly held that her consent was not voluntary. The following testimony offered by Appellee on direct examination establishes that fact:

Q. When you got to Washington Health System Greene, do you remember Trooper Pash reading you any warnings?

A. Not really. The only thing I remember is country music on the radio. I do remember that. We talked about that. We had other conversations.

Q. Do you recall him telling you that you were under arrest for driving under the influence of alcohol or a controlled substance, in violation of Section 3802 of the Vehicle Code; that he is requesting that you submit to a chemical test of blood; that if you refused to submit to the blood test, your operating privilege will be suspended for at least twelve months; if you previously refused a chemical test or was previously convicted of driving under the influence, you will be suspended for up to eighteen months; and that you have no right to speak to an attorney or anyone else

- 8 -

before deciding whether to submit to testing; if you request to speak to an attorney or anyone else after being provided these warnings, or you remain silent when asked to submit to a blood test, you will have refused the test? Do you recall those warnings being read to you?

A. No.

Q. When you were taken into Washington Health System Greene, do you recall having blood drawn?

A. Yes.

Q. Were you asked whether or not you wanted to give a blood sample?

A. I don't recall. But, I did do it.

Q. Did you feel like you had to give a blood sample?

A. Yeah.

Q. You felt like you had no other choice?

A. I mean, that's just what we were supposed to do.

N.T., 12/4/17, at 17-19.

In addition, during cross-examination, Appellee elaborated as follows:

Q. Why did you feel like you had to give a blood sample?

A. I just -- **when he said that's what I needed to do, then that's what I needed to do. I didn't know that I could refuse. I didn't know.** I probably wouldn't have anyhow.

Q. You said that you didn't know that you [could] refuse?

A. Right.

Q. But you didn't refuse?

A. I didn't refuse.

Q. **Did Trooper Pash tell you that you had to give a blood sample? Do you remember him saying that?**

A. **Yes.**

N.T., 12/4/17, at 19 (emphases added).

Consistent with the trial court's determination, our review of the record supports the conclusion that the Commonwealth failed to establish by a preponderance of the evidence that the result of the blood test is admissible. Specifically, the Commonwealth failed to prove that Appellee's consent to the blood draw was voluntarily given. Thus, the record supports the trial court's findings of fact, and we discern no error in its application of the law. Accordingly, we affirm the order of the trial court granting Appellee's motion to suppress.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/6/2019

- 10 -