J-A06045-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                    :          PENNSYLVANIA
                                                      :

            v.                                     :
                                                      :
                                                      :

LANA KAY ROE                          :
                                                      :

                 Appellant           :       No. 289 WDA 2023

Appeal from the PCRA Order Entered February 8, 2023
In the Court of Common Pleas of Greene County Criminal Division at
No(s): CP-30-CR-0000343-2012,
CP-30-CR-0000344-2012

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and BECK, J.

MEMORANDUM BY BECK, J.:                   **FILED: April 24, 2024**

Lana Kay Roe ("Roe") appeals from the order entered by the Greene County Court of Common Pleas dismissing her petition pursuant to the Post Conviction Relief Act ("PCRA").[1] On appeal, Roe argues that her trial counsel was ineffective for stipulating to her co-defendant's conviction of first-degree murder. Because we find no error in the PCRA court's finding that the stipulation did not prejudice Roe, and further find that Roe failed to establish that her trial counsel's strategy lacked a reasonable basis, we affirm.

A prior panel of this Court summarized the factual and procedural histories of this case:

> Around June 2012, [Roe] and her husband, Jason William Roe [("Mr. Roe")], moved to Daisytown, Pennsylvania, and

---

[1] 42 Pa.C.S. §§ 9541-9546.

befriended their neighbor, Cordele Patterson ("Victim"). Later that summer, [Roe] and Mr. Roe experienced marital difficulties, which resulted in both parties moving out of their residence in Daisytown. During the separation, and without Mr. Roe's knowledge, [Roe] sold two of the couple's firearms. In early August 2012, [Roe] and Mr. Roe reconciled and returned home to discover that someone had burglarized their home while they were away. [Roe] contacted police and reported the incident. In her report, [Roe] informed police that Victim had taken numerous items from the home including twelve firearms; however, only ten firearms were taken in the burglary. The two additional firearms listed in the report were the ones [Roe] sold during her separation from Mr. Roe.

In the early morning hours of August 14, 2012, Mr. Roe took Victim to a cabin owned by the Brewer family. Mr. Roe allegedly took Victim there to hide because of the police report filed by [Roe]. After dropping Victim off, Mr. Roe returned to Daisytown where he and [Roe] went to Victim's home and started removing items that allegedly belonged to them. [Roe] and Mr. Roe then drove [Roe]'s Jeep out to the cabin. On the way to the cabin, [Roe] and Mr. Roe stopped at a True Value hardware store and purchased a 12-gauge shotgun as well as buckshot and birdshot ammunition. [Roe] and Mr. Roe stopped again on the way to the cabin, so Mr. Roe could test-fire the shotgun. When [Roe] and Mr. Roe reached the cabin, Mr. Roe told [Roe] to go inside and get Victim. [Roe] complied; and, as she returned from the cabin with Victim behind her, Mr. Roe shot [Roe] in the face. Victim turned around and ran back into the cabin, while [Roe] ran to her Jeep and drove away. Mr. Roe chased Victim into the cabin and fatally shot Victim.

After Mr. Roe shot her, [Roe] drove to a neighbor's house; the neighbor called the police and reported the shooting. Police and paramedics responded to the neighbor's house, and paramedics transported [Roe] to Ruby Memorial Hospital in Morgantown, West Virginia. Police then proceeded to the cabin where they discovered Victim's body. Meanwhile, Mr. Roe fled from the cabin on foot and borrowed a white van from a nearby relative. Mr. Roe subsequently drove the van to West Virginia, where West Virginia authorities apprehended him. In the evening of August 14, 2012, Pennsylvania police interviewed [Roe] at the hospital. At the time, police regarded [Roe] as a victim. On August 15, 2012, police conducted a second interview of [Roe] at

the cabin where the shooting occurred. Police still considered [Roe] a victim at this time. After learning of various inconsistencies in [Roe]'s account of the shooting, police interviewed [Roe] again on August 24, 2012. This time police suspected [Roe]'s involvement in Victim's shooting, so Corporal Jeremy Barni read [Roe] her ***Miranda*** rights prior to the interview. After [Roe] waived her rights, police questioned [Roe] for over two hours. During this time, [Roe] admitted various facts that implicated her involvement in Victim's murder. [Roe] invoked her right to an attorney at the conclusion of the interview.

On September 20, 2012, the Commonwealth charged [Roe] with criminal homicide and false reports to law enforcement authorities at two separate dockets. The Commonwealth also charged Mr. Roe with criminal homicide and aggravated assault. On October 23, 2012, [Roe] filed an omnibus pre-trial motion in which she asked the court to sever her case from Mr. Roe's case for purposes of trial. After a hearing, the court agreed to sever [Roe]'s false reports to law enforcement authorities charge on March 12, 2013, based on concerns that it would cause [the] jury confusion in Mr. Roe's case. On November 5, 2013, [Roe] proceeded to a joint jury trial with Mr. Roe on the criminal homicide charge. The trial resulted in Mr. Roe's conviction of first-degree murder on November 15, 2013. That same day, the court declared a mistrial with respect to [Roe]'s criminal homicide charge because the jury was unable to reach a verdict.

Following the mistrial, the court set a new trial date for [Roe]'s case. On November 27, 2013, the Commonwealth filed a motion to consolidate [Roe]'s criminal homicide charge and false reports to law enforcement authorities charge. In its motion, the Commonwealth argued the risk of jury confusion no longer existed due to Mr. Roe's conviction. The court granted the motion on December 10, 2013. … [Roe] proceeded to a jury trial on March 24, 2014. … On March 28, 2014, the jury convicted [Roe] of first-degree murder and false reports to law enforcement authorities.

Immediately following [Roe]'s conviction, the court sentenced [Roe] to life imprisonment without the possibility of parole for the first-degree murder conviction, and a concurrent term of one (1) to two (2) years[ of] imprisonment for the false reports to law enforcement authorities conviction.

- 3 -

*Commonwealth v. Roe*, 138 WDA 2015, 2016 WL 5947484, at *1-2 (Pa. Super. Oct. 13, 2016) (non-precedential decision) (footnote omitted).

This Court affirmed Roe's judgment of sentence, and on March 22, 2017, our Supreme Court denied her petition for allowance of appeal. ***See id.***, *appeal denied*, 169 A.3d 15 (Pa. 2017).

On June 12, 2017, Roe filed a "Petition for Writ of Habeas Corpus." On September 1, 2017, the lower court entered an order construing that filing as a timely first PCRA petition. On March 9, 2022, after a series of delays not relevant to the disposition of this appeal, Roe file a counseled amended PCRA petition in which, inter alia, Roe argued that her trial counsel was ineffective at her second trial for stipulating that Mr. Roe had been convicted of first-degree murder and sentenced to life in prison. On August 2, 2022, the PCRA court held a hearing on the petition. At the hearing, Roe did not call any witnesses in support of her petition and the PCRA court only heard argument.

On February 8, 2023, the PCRA court entered an order denying Roe's PCRA petition. This timely appeal followed.[2] Both the PCRA court and Roe

---

[2] We note that Roe filed a single notice of appeal that listed both trial court docket numbers. "[W]here a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each case" and the failure to do so "will result in quashal of the appeal." *Commonwealth v. Walker*, 185 A.3d 969, 971 (Pa. 2018), *overruled in part*, *Commonwealth v. Young*, 265 A.3d 462, 477 (Pa. 2021) (reaffirming *Walker*, but concluding that Pa.R.A.P. 902 permits an appellate court, in its discretion, to allow for the correction of such an error); ***see also*** Pa.R.A.P. 902. This Court has concluded, however, that a breakdown in the operations of the court, which
*(Footnote Continued Next Page)*

complied with Pennsylvania Rule of Appellate Procedure 1925. Roe raises the following issue for review:

> Whether the PCRA [c]ourt erred in ruling that [Roe] received effective assistance of trial counsel when trial counsel stipulated that at an earlier trial of her co-defendant, with whom she was charged with having been an accomplice to [f]irst-[d]egree [m]urder, was convicted of first-degree [m]urder and sentenced to the statutorily required sentence of life in prison[?]

Roe's Brief at 4.

When reviewing a decision denying PCRA relief, we are limited to determining "whether the PCRA court's findings of fact are supported by the record" and "whether its conclusions of law are free from legal error." **Commonwealth v. Johnson**, 236 A.3d 63, 68 (Pa. Super. 2020) (citation omitted). While the PCRA court's credibility determinations are binding when supported by the record, we review the court's legal conclusions utilizing a de novo standard of review. **Id.**

With respect to claims of ineffective assistance of counsel, the law presumes counsel was effective. **Commonwealth v. Rivera**, 10 A.3d 1276,

---

excuses strict compliance with **Walker**, occurs when the lower court does not inform a defendant of their appellate rights or determine on the record that the defendant has been advised of their appellate rights. **Commonwealth v. Floyd**, 257 A.3d 13, 17 (Pa. Super. 2020); **see also** Pa.R.Crim.P. 908(E) (stating that a PCRA court "shall advise the defendant of the right to appeal from the final order disposing of the petition and of the time limits within which the appeal must be filed"). Here, the record reflects that the PCRA court failed to inform Roe of her appellate rights. We therefore conclude that, as in **Floyd**, a breakdown in the court's operations occurred in this case, and we decline to quash this appeal.

1279 (Pa. Super. 2010). A PCRA petitioner has the burden to overcome that presumption by establishing that "(1) [her] underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014). "To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." ***Id.*** at 312 (quotation marks omitted). "If a petitioner fails to prove any of these prongs, [her] claim fails." ***Id.*** at 311 (citation omitted).

Roe argues that at her second trial her trial counsel was ineffective, because counsel stipulated to Mr. Roe's conviction of first-degree murder without requesting any kind of curative instruction from the trial court that Mr. Roe's conviction could not be used as substantive evidence of her guilt. Roe's Brief at 13-19. She maintains that evidence of a co-defendant's conviction in the same case is inadmissible at the trial of another co-defendant. ***Id.*** at 15-16. Roe asserts that allowing the admission of such evidence undermined her right to a jury verdict based solely on the evidence presented at her trial and increased the likelihood that the jury would impermissibly rely on the decision reached by Mr. Roe's jury, finding her guilty by association. ***Id.*** at 15-18. She further contends that no possible reasonable basis exists for such a trial strategy. ***Id.*** at 18-19.

The PCRA court concluded that Roe was not prejudiced by trial counsel's stipulation to Mr. Roe's conviction of first-degree murder. PCRA Court Opinion, 2/8/2023, at 9. The court explained that the "stipulation was wholly consistent with the defense theory that [Roe] was not guilty of any crime but was instead herself victimized by [Mr.] Roe, her husband and co-defendant." *Id.* We agree.

The record reflects that at her second trial, Roe took the stand in her own defense. Specifically, Roe testified that she had no idea Mr. Roe was going to shoot her and kill Victim and that she was terrified of Mr. Roe because of what he had done. N.T., 3/24-28/2023, at 479, 484-86. Roe maintained that she never had any intent to harm Victim. *Id.* at 479. Thus, not only did Roe testify that Mr. Roe murdered Victim, but it was her defense theory that she was nothing more than a victim of Mr. Roe's actions in his effort to kill Victim. *See id.* at 479, 484. As Mr. Roe's guilt for Victim's murder was a central tenet of Roe's defense, Roe cannot maintain that a reasonable probability existed that, but for trial counsel's stipulation to Mr. Roe's conviction of first-degree murder, the result of the proceedings would have been different. *See Spotz*, 84 A.3d at 311. We therefore conclude that the PCRA court did not err in determining that Roe was not prejudiced by trial counsel's stipulation to Mr. Roe's conviction of first-degree murder.

In support of her claim, Roe cites *United States v. Leach*, 918 F.2d 464 (5th Cir. 1990), for the proposition "that evidence about the conviction of

a co[-]conspirator is not admissible as substantive proof of the guilt of a defendant."[3]  *Id.* at 467.  We find Roe's reliance on this authority unavailing. First, we note that we are not bound by the decisions of federal intermediate appellate courts.  *Commonwealth v. Dunnavant*, 63 A.3d 1252, 1255 n.2 (Pa. Super. 2013).  Second, *Leach* expressly recognized an exception to the general rule it pronounced, when, such as the instant matter, "the record reflects a defensive strategy which relies on the co[-]conspirators' guilt."  918 F.2d at 467.

Finally, we observe that at the hearing on Roe's PCRA petition, Roe did not call her trial counsel to testify.  Our Supreme Court has "expressed a distinct preference for a hearing on counsel's strategy before venturing to hold that counsel lacked a reasonable basis for his or her actions or inactions." *Commonwealth v. Spotz*, 870 A.2d 822, 832 (Pa. 2005); *see also Commonwealth v. Hughes*, 865 A.2d 761, 799 (Pa. 2004) (holding that where the PCRA court did not hold a hearing on a PCRA petition, appellate courts cannot discern whether a reasonable basis existed for counsel's action or inaction).  As there was no testimony at the PCRA hearing regarding trial

---

[3]  Roe also cites *Commonwealth v. Boyer*, 856 A.2d 149 (Pa. Super. 2004), which holds that it is "error to introduce a co-defendant's [guilty] plea without a cautionary instruction."  *Id.* at 155.  *Boyer*, however, is readily distinguishable from this case as it involved the introduction into evidence of a co-conspirator's guilty plea that the pleading party was attempting to withdraw.  *Id.*  Ultimately, this Court determined that the introduction of the co-conspirator's plea was harmless error because the appellant in *Boyer* had confessed to his crimes.  *Id.*

counsel's strategy regarding the stipulation to Mr. Roe's conviction of first-degree murder, we cannot conclude that Roe has established that trial counsel had no reasonable basis for this action. **See Spotz**, 84 A.3d at 311.

Accordingly, because Roe has failed to establish two of the three prongs of the test for ineffective assistance of counsel, the PCRA court did not err in denying her petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 04/24/2024